915 A.2d 224 (2006)
2006 VT 121
STATE of Vermont
v.
Sherrill HAZELTON.
No. 04-283.
Supreme Court of Vermont.
November 22, 2006.
*226 William D. Wright, Bennington County State's Attorney, and David R. Fenster and Daniel M. McManus, Deputy State's Attorneys, Bennington, for Plaintiff-Appellee.
Matthew F. Valerio, Defender General, Henry Hinton, Appellate Defender, and Rebecca Turner, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.
Present: REIBER, C.J., and DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
BURGESS, J.
¶ 1. Defendant appeals from his conviction and sentence following a jury trial on two counts of sexual assault. He claims on appeal: (1) that the court improperly allowed the State to introduce hearsay evidence against him; (2) that the court erred in allowing him to be prosecuted for two crimes arising out of a single act; and (3) that his concurrent sentences of eighteen to twenty years are illegal because, after allowing for good time off the maximum, the minimum term could match or exceed the maximum term. We reverse and remand on defendant's first point, respond to his second issue as germane to retrial, and do not reach his third issue.
¶ 2. Defendant was charged with sexually assaulting S.L., the niece of his girlfriend, while babysitting S.L. and her younger sister. S.L. was ten years old at the time of the alleged assault. S.L. testified that she had been playing outside with some other children and that when she went into the house to use the bathroom defendant sexually assaulted her by use of force. There was no other witness or evidence to corroborate the alleged assault. Defendant testified and denied the allegations.

I.
¶ 3. Defendant's first claim of error is that the trial court allowed the State to bolster S.L.'s credibility with hearsay after defense counsel impeached her testimony at trial with a prior inconsistent statement made in an earlier deposition. S.L.'s statements at issue  prior descriptions of the assault to the investigating police officer and to her grandmother  were proffered by the State on the theory that prior consistent statements would allow the prosecution "to argue that there were no other inconsistencies." The State cited State v. Church, 167 Vt. 604, 708 A.2d 1341 (1998) (mem.), as authority for admission of prior consistent statements to support the credibility of a witness impeached by a prior inconsistent statement.
¶ 4. Defendant argues that the trial court improperly admitted the testimony in reliance on our decision in Church, which allowed admission of prior consistent statements of a witness, not as substantive *227 nonhearsay evidence under V.R.E. 801(d)(1)(B), but for rehabilitation after the witness was impeached by prior inconsistent statements. Id. at 605-06, 708 A.2d at 1342. Defendant posits that Church should be limited or overruled. For the reasons discussed below, we agree with defendant that the trial court's application of Church to the instant case was overly broad and erroneous.
¶ 5. At trial, S.L. testified that while playing kickball, she entered defendant's home to use the bathroom when he grabbed her by the arm, brought her to his bedroom, undressed her, forced her face-down onto the bed, and held her down with one hand on her neck and the other under her stomach propping her up. She testified that she felt something go into her "baby hole," that it hurt, and that defendant made moaning noises. She said that after the assault she got her clothes, ran into the bathroom, and noticed she was bleeding from between her legs and that there was "white mushy stuff" on her. She stated that she cleaned herself with toilet paper and wrapped toilet paper around her underwear to stop the blood from leaking through. She also testified that after the assault, and before she went into the bathroom, defendant told her not to tell anyone and that if she did he would "hurt people [she] cared for." S.L. testified that afterwards she had nightmares about defendant, continued to spot blood for a few days (when she had not yet begun menstruating), and told her grandmother about the incident around Easter, some six months later.
¶ 6. On cross-examination, defense counsel sought to impeach S.L. by highlighting inconsistencies between her trial testimony and her earlier deposition testimony. Defense counsel asked S.L. whether any blood got onto her clothing, and S.L. responded that some blood got onto her underwear and she threw them away. Defense counsel then presented S.L. with her deposition testimony, where counsel asked whether she had bled onto her underwear, and S.L. answered: "No, not that I could recall."
¶ 7. After S.L. testified, the State presented testimony from Dr. Scattergood, who examined S.L. after she disclosed the alleged assault to her grandmother. The doctor related that during a sexual assault examination, S.L. reported that defendant "put his thing inside her, she had some spotting for two to three days, [and] afterward she was sore." Defendant raised no objection to this portion of the doctor's testimony.
¶ 8. After the doctor's testimony, the State proffered the investigating officer who took S.L.'s report of the assault, and S.L.'s grandmother who was the first person S.L. told about the assault, to testify about what complainant previously told them had happened at defendant's house. Defendant objected to the witnesses repeating S.L.'s prior statements as both inadmissible hearsay and improper rehabilitation. The State argued that the prior consistent statements were not offered for the truth of the matter asserted, but to support S.L.'s credibility in response to defendant's effort to impeach the witness with her prior inconsistent statements, and cited Church in support.
¶ 9. Defendant argued that repetition by others of S.L.'s versions of the assault would not rebut the inconsistency drawn out by the defense, and the State made no proffer that either witness's testimony would address the particular inconsistency raised by the defense: that S.L. testified at trial that there was blood on her underwear, but testified at an earlier deposition that she recalled no such blood. Agreeing that Church appeared to follow a rationale of admitting prior consistent statements *228 for the jury "to understand that these inconsistencies are minor with how many consistencies there have been in the past," the trial court allowed the prior consistent statements for that purpose. This ruling was incorrect, and so we revisit Church to clarify the use of prior consistent statements following attack on a witness's credibility by prior inconsistent statements. We do not here attempt to exhaust the circumstances in which the trial courts may find the admission of consistent statements relevant to rehabilitate a witness's credibility after impeachment. As each case may present unique circumstances, the application is best left to the sound discretion of the trial courts. Nevertheless, it must be said that Church does not stand for the proposition that, whenever an inconsistency is raised as to one detail of a story, the opposing party may introduce prior out-of-court statements consistent with other aspects of a witness's testimony, without any rebuttal force to the contradiction or to the source of the impeachment.
¶ 10. In Church, a child-sexual-assault case where evidence of recantation was introduced as a prior inconsistent statement to impeach the child's testimony, the defendant argued that it was error to allow a witness to testify to the child's prior consistent statements outside of the limited circumstances outlined in V.R.E. 801(d)(1)(B). 167 Vt. at 605, 708 A.2d at 1342; see also V.R.E. 801(d)(1)(B) (providing that a statement is not hearsay if consistent with the witness's trial testimony and "offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive"). Rule 801(d)(1)(B) was inapplicable in Church, because the statements were not offered as substantive nonhearsay evidence under that rule, but were offered solely to rehabilitate the witness after her credibility was impeached by an apparent recantation. 167 Vt. at 605, 708 A.2d at 1342 ("V.R.E.801(d)(1)(B) does not govern the admissibility of prior consistent statements to rehabilitate a witness; it `merely allow[s] a certain subset of these statements to be used as substantive evidence of the truth of the matter asserted.'" (quoting United States v. Ellis, 121 F.3d 908, 919 (4th Cir.1997), cert. denied, 522 U.S. 1068, 118 S.Ct. 738, 139 L.Ed.2d 674 (1998))).
¶ 11. That the evidence is not offered under Rule 801(d)(1)(B) for substantive purposes does not end the inquiry into the relevance of prior consistent statements for rehabilitative purposes, nor their admissibility. As we stated in Church, a prior consistent statement offered to rehabilitate a witness "is admissible when it has `some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony.'" 167 Vt. at 605, 708 A.2d at 1342 (quoting Ellis, 121 F.3d at 920) (emphasis added). As observed in Ellis, prior consistent statements have significant rebutting force and countering effect where they "serve to clarify whether the impeaching statements really were inconsistent within the context of the interview, and if so, to what extent"; where they are "offered to clarify or amplify the meaning of the impeaching inconsistent statement"; where they "bear on whether, looking at the whole picture, there was any real inconsistency"; or where, in accord with the "Doctrine of Completeness," the one against whom part of a statement has been admitted into evidence seeks to complement the evidence by putting in the remainder of the statement to demonstrate a "complete understanding of the total tenor and effect of the utterance." 121 F.3d at 920 (internal citations and quotations omitted).
*229 ¶ 12. The requirement that prior consistent statements used to rehabilitate a witness after impeachment by inconsistent statements must particularly dispel, explain, modify, or clarify the inconsistency is not a new concept in Vermont. See, e.g., Ronan v. Stannard, 100 Vt. 436, 438, 138 A. 729, 729 (1927) (holding that where "cross-examination was obviously an attempt to discredit the witness by showing that he had testified differently on a previous occasion. . . . it was proper on reexamination to show such of his former testimony as tended to modify or qualify the effect of such parts thereof as were elicited on cross-examination"); State v. Turley, 87 Vt. 163, 174, 88 A. 562, 567 (1913) (observing the widespread repudiation of rules allowing a witness to be sustained by her corroborative prior statements after being discredited by her contradictory accounts of a transaction, but recognizing exceptions such as where the evidence is offered to dispel the inference that the witness ever made the contradictory statements).
¶ 13. While we recognize that Church might, at first glance, convey a broad application of the rehabilitative use of prior consistent statements, the predicate remains that the prior statement must have some "rebutting force" other than that the witness merely said something earlier that was the same as that part of her trial testimony that was not impeached. Church, 167 Vt. at 605, 708 A.2d at 1342. The record here reveals that the trial court believed Church was broad enough to authorize admission of prior consistent statements to bolster the testimony of a witness impeached by prior inconsistent statements, without having to specifically counter the inconsistency, and understood such rehabilitation to be particularly appropriate in the instant case where, like Church, the impeached witness was a child. In Church, the child's prior statement, consistent with her testimony that defendant assaulted her, was allowed after a witness testified that the child recanted in an earlier conversation. Id. at 605-06, 708 A.2d at 1342. The rehabilitative evidence in Church, showing that an earlier allegation of assault was consistent with the child's trial testimony, was no more broad than the measure of impeachment  an alleged recantation of the assault complaint. The rehabilitation in Church focused on the specific topic of the impeachment, while it also tended to rebut the credibility of the witness-declarant. In contrast, the source of the prior impeaching statement in the instant case was S.L.'s own deposition testimony about having no memory of blood on her underwear, and only a small part of the officer's testimony confirmed that S.L. spoke of blood prior to the deposition, while her grandmother's testimony did not mention blood at all.
¶ 14. In light of the evolution of case law disfavoring admission of prior statements solely for the purpose of repeating the same general story, the trial court incorrectly read Church to allow the State to attempt to overshadow a witness's inconsistency with a consistent repetition of other details of the assault  as opposed to attempting to contradict, explain, modify, qualify, dispel or in any way address or rebut the particular inconsistency drawn from a witness. Cf. United States v. Simonelli, 237 F.3d 19, 26 (1st Cir.2001) (finding little basis for admissibility in rehabilitative questioning by the government that went beyond the specific inconsistencies where the purpose "was not to show there was really no inconsistency but to show that [the witness] did not lie about everything and that most of what else he had to say at trial was consistent with what he had said earlier to the grand jury").

*230 II.
¶ 15. We next address whether the trial court's erroneous evidentiary rulings require reversal under harmless-error analysis. "When the error involves improper admission of evidence, the error cannot be harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." State v. Oscarson, 2004 VT 4, ¶ 30, 176 Vt. 176, 845 A.2d 337 (internal quotations omitted); see also State v. Catsam, 148 Vt. 366, 371, 534 A.2d 184, 188 (1987) ("[H]armless error analysis requires the reviewing court to inquire if, absent the alleged error, it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error." (internal quotations omitted)). It is the State's burden to establish beyond reasonable doubt that the jury would have returned the same verdict if the error had not occurred. State v. Goodrich, 151 Vt. 367, 377-78, 564 A.2d 1346, 1352 (1989). "The burden is a difficult one[.]" Id. at 377, 564 A.2d at 1352. Because we cannot conclude the court's errors were harmless beyond a reasonable doubt, we reverse and remand for a new trial.
¶ 16. To calculate whether the error was harmful, this Court considers the following factors: "`the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" State v. Lynds, 158 Vt. 37, 42, 605 A.2d 501, 503 (1991) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). The State argues that any error in admitting the grandmother's and officer's testimony was harmless beyond a reasonable doubt because defendant did not object to the same evidence when it came in through the examining physician's testimony, so the jury would have heard it anyway, and the evidence did not involve the introduction of additional evidence, only repetition of facts already known to the jury.
¶ 17. First, we review the testimony of the law enforcement officer. The officer repeated many of the same facts S.L. stated in her direct testimony, albeit in briefer fashion  that she went inside to use the bathroom during a kickball game, defendant immediately grabbed her, brought her to his bedroom, removed her clothes, threw her onto the bed, held her down with one hand on her neck and the other under her pelvis, raped her, and told her he would hurt people she loved if she told anyone.
¶ 18. The grandmother's testimony was more summary and brief than the officer's. She stated that S.L. told her "they had been out playing, [S.L., her sister, and defendant's son], and [S.L.] went in to go to the bathroom, and [defendant] grabbed her and threw her down on the bed face first and held her down by the neck, pulled down her clothes and raped her." Like the testimony of the officer, none of the information offered any embellishment or more detail than S.L.'s own testimony on direct and cross-examination.
¶ 19. We agree with the State that the evidence was cumulative in so far as no new facts about the alleged assault were offered by the officer or the grandmother. The record reflects that S.L. was the most articulate witness on the details of the alleged assault, and the officer and grandmother added no substance or new information to the child's testimony. The doctor previously testified, without objection, to S.L.'s most damaging prior statement  that defendant "put his thing inside her." *231 Prior consistent statements are inherently cumulative, so whether the evidence is cumulative is not the end of the inquiry under the Van Arsdall factors. The factors most relevant to harmless-error analysis in this case are the importance of the evidence to the State's case and the overall strength of the State's case. The importance of the testimony to the prosecution was not in the particular factual information presented, but the effect of the additional testimony in improperly bolstering S.L.'s credibility.
¶ 20. If believed, the testimony of S.L., alone, was enough to convict defendant. The express purpose of the grandmother's and the officer's testimony to the prosecution's case was to bolster the believability of S.L.'s version over defendant's version of events. The State argued extensively to the trial judge that Church allowed it to show how consistent S.L. had been at other points to balance the particular inconsistencies raised in cross-examination. Nothing in the record reflects that the child's version was inherently credible, or defendant's denial necessarily implausible. With credibility being the key ingredient in this swearing contest between complainant and defendant, and absent any independently corroborating evidence of the assault, we cannot avoid a conclusion that it was reasonably possible, as intended, that the erroneously admitted testimony influenced the jury's decision to believe S.L. Moreover, the court specifically instructed the jury that, in determining the credibility or believability of each witness, it could consider "any prior statements . . . that were consistent or inconsistent with the witness's trial testimony, the internal consistency or inconsistency of a witness's testimony and its support or contradiction by any other evidence in the case."[1] The jury could presume from the court's instructions that it was proper to consider the entire repeated recitation of the story as relayed by the officer and the grandmother, and which comprised the great majority of their testimony, as enhancing S.L.'s credibility.
¶ 21. Finally, we address the State's argument that the jury already heard S.L.'s prior statements from the examining doctor that "[S.L.] said . . . he put his thing inside her." We are not persuaded that the doctor's statements negate the prejudicial effect of the officer's and grandmother's testimony, or that the doctor's testimony, as the State argues, was merely the "same" evidence. The doctor's testimony was arguably more impressive than the testimony under objection. We cannot, however, conclude that the doctor's statement was so independently convincing as to foreclose the possibility, beyond a reasonable doubt, that the jury's verdict was influenced by the improperly admitted hearsay of the officer and grandmother. There would appear to be no purpose, other than improper credibility bolstering, for the jury to consider the prior-consistent-statement testimony of the officer and the grandmother. Under these particular circumstances, where the trial court erroneously allowed two witnesses to recite S.L.'s step-by-step version of the events *232 for the express purposes of bolstering her credibility after defendant's attempts to impeach her in a swearing contest, we cannot conclude that the multiple errors were harmless beyond a reasonable doubt.
¶ 22. Given our reversal of the conviction and sentence on defendant's first issue, we need not reach defendant's third claim of error that failure to consider speculative good-time reductions to a maximum sentence can result in an illegally long minimum sentence. We do, however, address defendant's remaining legal argument because it is likely to arise in a new trial. See State v. Morale, 174 Vt. 213, 215, 811 A.2d 185, 187 (2002) (noting that the Court may reach issues likely to recur on remand in the interest of judicial economy).

III.
¶ 23. Defendant next contends that the court erred in allowing him to be convicted and sentenced on the two charges filed when, at most, the State's evidence could support but one offense. The State alleged a single act of sexual intercourse with S.L., but charged two separate counts under 13 V.S.A. § 3252, which provides, in pertinent part:
(a) A person who engages in a sexual act with another person and
(1) Compels the other person to participate in a sexual act:
(A) Without the consent of the other person; or
(B) By threatening or coercing the other person; or
(C) By placing the other person in fear that any person will suffer imminent bodily injury; or
. . . .
(3) The other person is under the age of 16, except where the persons are married to each other and the sexual act is consensual;
. . . .
shall be imprisoned for not more than 20 years, or fined not more than $10,000.00, or both.
Count I of the State's information charged that defendant violated § 3252(a)(3) by engaging in sexual intercourse with a person under the age of sixteen to whom he was not married. Count II charged that defendant violated § 3252(a)(1) by compelling a person to participate in a sexual act "without consent," an apparent violation of subsection (a)(1)(A).
¶ 24. We agree that defendant could be convicted and sentenced for only one of the two counts charged against him. "When a defendant is tried in a single trial for two statutory offenses that criminalize the same conduct, whether or not a conviction and sentence may be had under each statute is a question of legislative intent, not constitutional prohibition." State v. Ritter, 167 Vt. 632, 632, 714 A.2d 624, 625 (1998) (mem.) (quoting State v. Grega, 168 Vt. 363, 382, 721 A.2d 445, 458 (1998)). "[W]e apply as a rule of statutory construction the test first enunciated by the Supreme Court in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under this test, two offenses are considered the same offense for double jeopardy purposes unless `each provision requires proof of a fact that the other does not.'" Id. Ritter, 167 Vt. at 632-33, 714 A.2d at 625. In this case, despite some surface difference, the two offenses charged against defendant are essentially the same. The substantive elements of criminal sexual contact with an unmarried minor under the age of sixteen under § 3252(a)(3) are the same as the substantive elements of sexual assault compelled "without . . . consent" under § 3252(a)(1)(A).
*233 ¶ 25. On cursory review, the two charges against defendant do seem facially different. While both sexual-assault crimes require proof that defendant engaged in a sexual act with another person, each offense appears to include additional elements that the other does not. Compelled sexual assault, punishable under § 3252(a)(1)(A), (B) or (C), addresses an offender who "compels" a victim to engage in a sexual act, either without consent, by threat or force, or by putting the victim in fear of immediate injury to any person. Strict liability sexual assault, or so-called statutory rape, criminalized by § 3252(a)(3), turns on whether the person engaged by an offender in a sexual act was not married to the offender and was under the age of sixteen at the time. Neither compulsion nor consent are elements of, or even relevant to, the § 3252(a)(3) offense of statutory rape, so that, typically, "[n]othing more than a calendar and the person's birth certificate are required to determine the statute's applicability." State v. Barlow, 160 Vt. 527, 530, 630 A.2d 1299, 1301 (1993).
¶ 26. While differences between the two crimes may be apparent, they are not real.[2] Despite the language in § 3252(a)(1)(A) outlawing one who "[c]ompels the other person to participate in a sexual act . . . [w]ithout the consent of the other person," no actual force or compulsion is necessary to commit the offense. No greater degree of compulsion is actually required for a violation of subsection (a)(1)(A) than is included as a matter of law in the offense of statutory rape under subsection (a)(3). The victim is "compelled" to engage in a sexual act in violation of § 3252(a)(1)(A) as the result of an offender's conduct to unilaterally engage another in a sexual act "without consent," that is, without any indication that the victim is freely willing to participate. See 13 V.S.A. § 3251(3) ("`Consent' means words or actions by a person indicating a voluntary agreement to engage in a sexual act."). The element of compulsion is satisfied by lack of consent alone. That any compulsion beyond lack of consent is not an element of § 3252(a)(1)(A) is confirmed by the statute's explicit coverage of sexual assault compelled by actual threat, force, or intimidation in subsequent subsections 3252(a)(1)(B) and (C), as well as our holding in State v. Nash that subsections (A), (B) and (C) of § 3252(a)(1) "are separate ways by which the single offense of `compelling' may be committed." 144 Vt. 427, 433, 479 A.2d 757, 760 (1984).
¶ 27. At the time of this offense, it was long settled under Vermont law that it was legally impossible for an unmarried child under the age of sixteen to consent to sexual acts. State v. Thompson, 150 Vt. 640, 644, 556 A.2d 95, 98 (1989). Because sexual acts with a single child under sixteen years old were nonconsensual as a matter of law, such acts with such a child were necessarily "compelled" merely by the child's incapacity to consent. "The legislature, among others, would certainly be surprised to find that sexual assault on a minor does not involve force or aggression and is consensual, even though consent by a minor is not legally possible." Id. (citation omitted).
¶ 28. The rule that an underage child cannot consent to sex need not derive from *234 statute, as suggested by the dissent, but is a part of common law. Vermont's common law carried over from England, 1 V.S.A. § 271,[3] included the statute 18 Eliz., c. 7, making it a felony to have carnal knowledge of a girl under the age of ten "with or without her consent," and its case law establishing the legal impossibility that an underage child could consent to sex. See Coates v. State, 50 Ark. 330, 7 S.W. 304, 306 (1888) (explaining that under the statute of 18 Elizabeth, "in force [similarly to Vermont] when we adopted the law of England as our own . . . [t]he presumption in every such case was that the female, by reason of her tender years, was incapable of consenting . . . [and] the presumption was conclusive"); 2 W. LaFave, Substantive Criminal Law § 17.4(c), at 648 (2d ed.2003) (the rationale of the statute "was that a child under that age `should be regarded by the law as incapable of giving effective consent.'") (citing history related in the Model Penal Code § 213.1, cmt. at 276 (1980)). At the time of this charge, no statute altered the common law in this regard, except to extend the incapacity to consent from age ten to eleven, 1791 Haswell, p. 294, to fourteen, 1886, No. 63, § 1, and then to sixteen years of age, 1898, No. 118, § 1, with an exception for married minors added later. 13 V.S.A. § 3252(a)(3); 1985, No. 83, § 2.
¶ 29. The dissent correctly observes that the statutory definition of "consent" under 13 V.S.A. § 3251(3) nowhere excludes minors from entering into voluntary agreements to engage in sexual acts, but this statute does not alter the common law making such consent by underage children a legal impossibility. "The common law is changed by statute only if the statute overturns the common law in clear and unambiguous language, or if the statute is clearly inconsistent with the common law, or the statute attempts to cover the entire subject matter." Langle v. Kurkul, 146 Vt. 513, 516, 510 A.2d 1301, 1303 (1986). The statute simply fails to address the issue of a minor's legal capacity to consent, and the definition is not inconsistent with a minor's incapacity to consent under common law. Since enactment of this statutory scheme in 1977, this Court has continued to recognize the application of common law impossibility of consent by underage minors. Thompson, 150 Vt. at 644, 556 A.2d at 98; N. Sec. Ins. Co. v. Perron, 172 Vt. 204, 216, 777 A.2d 151, 160 (2001) ("[M]inors cannot appreciate the nature and consequences of, and therefore lack the ability to consent to, sexual activity for purposes of Vermont criminal law.").
¶ 30. The dissent argues that § 3254, providing that "lack of consent" is proved when the actor "[k]nows that the other person is mentally incapable of understanding the nature of the sexual act," or "is not physically capable of resisting, or declining consent," applies to a person engaging in sex with underage children. This supposes a legislative purpose to gauge culpability upon the accused's subjective assessment of an underage child's capacity to consent to sexual contact. This approach would seem to resurrect notions of "mistake" as a defense to a § 3252(a)(1)(A) charge of sexual contact with an underage child "without . . . consent," which the dissent contends is an offense distinct from statutory rape. However, "sexual intercourse with a [child] under a certain age, has traditionally been considered a strict liability offense, where `mistake as to the age of an underage participant has been accorded no defensive significance.'" State v. Searles, 159 Vt. 525, 527, 621 A.2d 1281, 1283 (1993) (citations omitted) (observing that "Vermont *235 has neither statutorily deviated from the traditional rule, nor done so by judicial decision."). As pointed out in Deyo, 2006 VT 120, ¶ 20, ___ Vt. ___, 915 A.2d 249, the dissent's reading of the statute would also appear to extend the defense of consent to repeated sexual acts between an incestuous parent and an underage child.[4] We view such legislative intentions as unlikely.
¶ 31. If the Legislature really intends consent to be available as a defense for persons having sexual contact with underage children, and to render underage children capable of sexual consent, it must expressly so declare.[5]Langle, 146 Vt. at 516, 510 A.2d at 1303.
¶ 32. The statutes defining sexual assault under § 3252(a)(1)(A), sexual assault of minors under § 3252(a)(3), or aggravated sexual assault under § 3253 did nothing to abrogate an unmarried minor's common law incapacity to consent to sex. The succession of Vermont statutes criminalizing sex with underage children "with or without" their consent do not contradict the common law's conclusive presumption against consent by underage children. The Legislature simply repeated this original language from 18 Elizabeth, c. 7 while extending, in stages, the age of nonconsent from ten to sixteen years of age. In State v. Sullivan we held that where the statute prohibited sexual contact with a child under the age of fourteen "with or without her consent," and where a charge of violating another statute prohibiting "assault to commit rape" specified that the victim was under the age of fourteen, "the element of consent is eliminated" even though rape would ordinarily require proof of force against the will or without the consent of the victim. 68 Vt. 540, 543, 35 A. 479, 479 (1896). The Court also noted that the same offense was "indictable at common law." Id. The legislative reference to "with or without consent" did not suggest that an underage child could consent to sex.
¶ 33. The holding of State v. Wheat, 63 Vt. 673, 22 A. 720 (1891), cited by the dissent is not to the contrary. Wheat was indicted and convicted for attempting to assault a female with the intent to "carnally know" her "against the will of her." Id. at 675, 22 A. at 720. The trial court allowed the State to prove that the female was under the age of consent, and instructed the jury "that it was immaterial whether the girl consented to the attempted intercourse or not." Id. On appeal, Wheat argued that "the statute which would have deprived him of the defense of consent if his purpose had been accomplished [i.e., statutory rape], does not deprive him of that defense as regards the attempt, and that in the absence of any statutory provision an attempt which is consented to cannot *236 be an assault." Id. This Court first noted that other jurisdictions had split on the issue, and then expressly declined to rule on it as unnecessary to the disposition of the case. Id.
¶ 34. Instead, the Court focused exclusively on the particular pleading in the indictment. As the dissent recites, the Wheat Court recognized the difference between "ordinary" rape and statutory rape, and that in the first offense "the question of age is not involved." Id. But this was only in the context of how the crime was particularly charged in the indictment against Wheat. Id. Because the indictment charged attempted "ordinary" rape, without any mention of the age of the complainant or any other notice to the defendant that a consent defense could be precluded by virtue of the complainant's age, this Court found that fairness to the defendant required that consent remain material while the complainant's age should be immaterial. Id. at 676, 22 A. at 720 ("This indictment did not inform the respondent that the charge was one wherein the effect of consent might be taken away by proof of age. He might well assume that nothing but proof of consent was necessary to his defense, and so go to trial without any evidence as to the age of the person consenting."). The Court repeatedly couched its opinion in terms of leaving open the question that it did not decide: whether proof that the victim was underage eliminated the defense of consent to a charge of attempted rape. Id. ("Even if the law permits a conviction for an attempt which is consented to, we think that in a trial on this indictment it was error to hold that consent was immaterial. . . . So if it were to be held that one may be punished for an unsuccessful attempt to have carnal knowledge of a female under the age of fourteen years with her consent, we think that on the charge here made proof that the female was under that age would not relieve the State from showing that the attempt was against her will. As this indictment is framed, it is the age which is immaterial, and not the fact of consent." (Emphasis added.))[6]
¶ 35. Six years later, State v. Sullivan, 68 Vt. 540, 35 A. 479 (1896), answered the question left open in Wheat. Reviewing a conviction upon an indictment for assault with intent to commit rape that specified the victim was under the age of fourteen, we held that when the charge recites that the attempted rape victim is under the age of consent, "the element of consent is eliminated," regardless of the element of force otherwise required for the underlying crime of rape. Id. at 543, 35 A. at 479. Ultimately, Wheat is inapposite to the dissent's position, and in this case, as in Deyo, the majority follows the law and logic of Sullivan to eliminate consent as irrelevant to prohibited sex with an underage child.[7]
*237 ¶ 36. A later amendment to § 3252(a)(3) redefining "statutory rape" is raised by the dissent as an example of when the "consent in fact" defense is available, but compels no change in the foregoing analysis. The new legislation provides that a person over the age of fifteen may consent to sex with another under the age of nineteen. 2005, No. 192 (Adj.Sess.), § 10.[8] The amendment simply rolls back the statutory age of consent, by one year, for actors within the age bracket of fifteen to nineteen years old. This exception to the common law, expressly carved out by the Legislature, still does not make consent to sex any less impossible for children outside of the specified age bracket who remain, as before, statutorily under the age of consent. Indeed, it was the impossibility of consent under common law that made it necessary to legislate the new exemption from strict criminal liability for sexual contact between fifteen-year-olds and those under nineteen years of age. The dissent's reliance on the § 3252(a)(3) recognition of consent by married fifteen-year-olds, otherwise under the age of consent, to support the proposition that children can consent to sex regardless of age, is misplaced. This exception, fully within the Legislature's power, is expressly limited to the circumstance of a minor's marriage, and does not abrogate the general common law rule that other underage minors cannot consent to sex.
¶ 37. The one statutory difference between the two offenses in effect at the time, that the victim must be unmarried to the offender for there to be a violation of § 3252(a)(3), is so insubstantial as to be indistinct. When the victim is under sixteen, the gravamen of both charges is that the victim is incapable of consent unless married to the defendant. The fact of a married minor is so unlikely that the pleading requirement of § 3252(a)(3) is practically moot. While the absence of marriage must be affirmatively pled for a charge of statutory rape under § 3252(a)(3), the fact of marriage is equally relevant to a charge of compelled sexual assault under § 3252(a)(1)(A) when the victim is under sixteen, since legislative recognition of a minor's marriage introduces the defense of consent to both charges. Once the issue of a minor's marriage to the accused is raised, under both § 3252(a)(1)(A) and § 3252(a)(3), the State has the burden of proving actual lack of consent in either case. In real terms of actual liability, the required allegation of nonmarriage in one offense, but not the other, is meaningless.
¶ 38. When, as here, the victim was unmarried and under the age of sixteen, there was no practical difference between the offenses charged. Both would punish defendant for the single act of engaging in a sexual act with the minor. Coercion and consent are not elements of statutory rape defined simply as sex with a nonspouse minor under § 3252(a)(3), and actual coercion and lack of consent are equally irrelevant to a charge of "compelled" sexual assault against a nonspouse minor under § 3252(a)(1)(A) since consent is impossible and the offense of "compels" is automatically satisfied by the absence of consent under Nash, 144 Vt. at 433, 479 A.2d at 760. The exact words to be pled may differ, but both subsections require only an allegation that the defendant engaged in a *238 sexual act with a person under the age of sixteen.
¶ 39. The Legislature is free to punish the same conduct under two statutes, but its intent to do so must be clear. Ritter, 167 Vt. at 632, 714 A.2d at 625. "Because the two provisions set forth the `same' offense under the Blockburger test, we must presume that the Legislature did not intend for the imposition of cumulative punishment. . . ." Grega, 168 Vt. at 384, 721 A.2d at 460. The presumption may be overcome, but only by a "clear indication of contrary legislative intent," such as an explicit provision that the penalty is to apply cumulatively. Id. at 385, 721 A.2d at 460. No clear expression of that sort appears here, where the statute simply provides a generally applicable penalty of a fine and up to twenty years imprisonment for any one of the four sexual offenses disjunctively listed in § 3252(a)(1) through (4). The statute is silent as to any legislative purpose to impose a cumulative penalty for a single incident violating both subsections dealing with the same nonconsensual sexual act, a "statutory rape" under § 3252(a)(3) and a sexual contact "without . . . consent" under § 3252(a)(1)(A). Accordingly, only one sentence may be imposed in the event of conviction.
Defendant's convictions and sentence for the two counts of sexual assault under 13 V.S.A. § 3252(a) are vacated, and the judgments reversed, and the matter is remanded for a new trial.
DOOLEY, J., concurring in part and dissenting in part.
¶ 40. In these two cases, State v. Deyo, 2006 VT 120, ___ Vt. ___, 915 A.2d 249, and State v. Hazelton, 2006 VT 121, ___ Vt. ___, 915 A.2d 224, the majority has adopted a convoluted construction of the sexual assault statutes to avoid the obvious conclusion that they say what they mean and mean what they say. To reach this construction, we must also hold that the Legislature adopted the same crime twice, although it used entirely different language in doing so. The construction is inconsistent with basic canons of statutory construction as well as a presumption that the Legislature did not enact duplicative statutes. Thus, I dissent from Part III of the majority opinion in Hazelton, and, although I concur in the result, I disagree with the analysis in Part II of the majority opinion in Deyo.
¶ 41. The consideration of these cases and issuance of these opinions at the same time offers a unique opportunity to reach a consistent and coherent construction of the statutes as related to sexual assault on a minor. Unfortunately, the majority fails to reach the correct construction because it concludes, without any support in the statutory language or evidence of legislative intent, that the Legislature intended to adopt the common law doctrine that a minor cannot consent to a sexual act. Under the language of the statutes, that conclusion is wrong.
¶ 42. In approaching this dissent, I am reminded of the well-worn maxim that when a decision uses the word "clearly," it is a certain signal that the opposite is true. Here, the majority states in Deyo that the "statutes in question unambiguously" apply to this case. 2006 VT 120, ¶ 15. The one thing that is clear about the issue before us is that the statutes do not unambiguously state the rule that the majority reaches. The wording chosen is a strong signal of this point.
¶ 43. The majority's point expressed over and over again in various statements is that because the common law stated that *239 a minor,[9] or a person under ten years of age, cannot consent to a sexual act, therefore a statute using the term "consent" or any of its derivatives must adopt the common law rule. If the majority actually adopted the common law rule, that position would be consistent with the statutory construction rule, cited and centrally relied upon by the majority, that the "common law is changed by statute only if the statute overturns the common law in clear and unambiguous language." Langle v. Kurkul, 146 Vt. 513, 516, 510 A.2d 1301, 1303 (1986). But the rule the majority adopts is actually the following based on the current version of the relevant statute: A person under sixteen years of age cannot consent to a sexual act with another person unless: (1) the person is fifteen years of age and the other person is under nineteen years of age, or (2) the persons are married. This rule is so different from the common law rule that its relationship to the common law rule is barely recognizable. The enormous difference is a demonstration that the Legislature has covered "the entire subject matter" statutorily and the common law is no longer determinative. Id.
¶ 44. With that overview in mind, I will return to the beginning. There are three primary statutes involved in these cases; at the time of the offense they existed in the following versions. The first is 13 V.S.A. § 3252(a), the basic sexual assault statute. It provides:
(a) A person who engages in a sexual act with another person and
(1) Compels the other person to participate in a sexual act:
(A) Without the consent of the other person; or
(B) By threatening or coercing the other person; or
(C) By placing the other person in fear that any person will suffer imminent bodily injury.
Id. The second is the statutory rape statute, also contained in § 3252(a). It provides:
(3) The other person is under the age of 16, except where the persons are married to each other and the sexual act is consensual[.]
Id. The third is the aggravated sexual assault statute, 13 V.S.A. § 3253(a). It provides in relevant part:
(a) A person commits the crime of aggravated sexual assault if the person commits sexual assault under any one of the following circumstances:
. . . .
(9) The victim is subjected by the actor to repeated nonconsensual sexual acts as part of the same occurrence or the victim is subjected to repeated nonconsensual sexual acts as part of the actor's common scheme and plan.
Id. The maximum penalty for aggravated sexual assault is life imprisonment. Id. § 3253(b).
¶ 45. The statutes are closely related, and must be construed in pari materia, a point on which the majority seems to *240 agree. In developing a complete and consistent construction when applied to minor victims, it is appropriate to start with the aggravated sexual assault statute, the subject of Deyo. The majority construes § 3253(a)(9) to adopt the common law rule that a minor cannot consent to sexual contact.[10] Thus, if the defendant performs repeated sexual acts with a minor in the same occurrence or part of a common scheme or plan, defendant has committed aggravated sexual assault. Under our decision in State v. Fuller, 168 Vt. 396, 402, 721 A.2d 475, 480 (1998), "repeated" means twice.
¶ 46. The majority responds to some reasons why its construction might be erroneous  I consider these below  but ignores the most obvious one. Aggravated sexual assault is a life imprisonment crime, essentially the maximum penalty under our law. This penalty applies to the most heinous of crimes, like murder. To hold that it applies to consensual sexual activity of a male of nineteen years or older and a female under fifteen years is wholly disproportionate to other offenses for which the penalty is reserved. I don't think it is an answer to the extreme nature of the punishment that sexual conduct must occur twice or that conduct that is consensual in fact is deemed nonconsensual by the law. While I recognize that the Legislature, and not this Court, determines the range of permissible punishment for an offense, the obvious mismatch between the punishment and the offense should give us pause in determining the scope of the crime.
¶ 47. On this point, the recent amendment to the sexual assault statutes is relevant. While narrowing the crime of statutory rape, the Legislature lowered its maximum penalty to twenty years in prison from thirty-five years. 13 V.S.A. § 3252(f)(2). At the same time it established a mandatory minimum sentence for aggravated sexual assault, the offense involved in Deyo. That mandatory minimum sentence is normally ten years in jail, but in special circumstances it can be reduced to five yeas in jail. Id. § 3253(c)(1), (2). A person subject to the mandatory minimum cannot have the sentenced reduced "for probation, parole, furlough, or any other type of early release" until the minimum is served. Id. § 3253(c)(1). Thus, while reducing the penalty for one incident of statutory rape, the Legislature has made even harsher the sentence for repeated nonconsensual sexual acts.
¶ 48. The second major objection to the majority's conclusion is it creates unnecessary inconsistencies in statutes that must be read in pari materia. The word "consent," or its derivatives, is used three times in the statutes that define the crime of sexual assault and aggravated sexual assault, the statutes we are considering. It is also defined in § 3251(3) and § 3254. In general, the usage in these statutes is wholly inconsistent with the definition the majority has adopted.
¶ 49. The first inconsistency is with the definition of "consent" in 13 V.S.A. § 3251(3): "words or actions by a person indicating a voluntary agreement to engage in a sexual act." Nowhere does the definition convey that voluntary agreement by a minor is not consent, the holding of the majority. Indeed, the plain meaning of the words is to the contrary. The majority has no explanation for this inconsistency other than that the common law, not the statute, defines consent. Where the Legislature has taken on itself the responsibility of defining consent, that explanation is wrong.
*241 ¶ 50. The second, and most important, inconsistency is that the one usage from which the meaning of consent can be determined on the exact question before us is contrary to the majority's holding. Thus, the statutory rape provision, § 3252(a)(3), provides that a person commits sexual assault if the "other person is under the age of 16, except where the persons are married to each other and the sexual act is consensual." (Emphasis supplied.) Obviously, the use of the term "consensual" does not depend upon the age of the victim; if it did, the statute would be nonsensical. It means exactly as the definition in § 3251(3) provides.[11]
¶ 51. The current statute carries forward the usage from the former rape statutes, 13 V.S.A. §§ 3201 & 3202, now repealed. The statutory rape provision, § 3201, criminalized sexual acts by a person over sixteen years of age with a female under the age of sixteen "with or without her consent."[12] The companion provision applicable to a defendant under the age of sixteen years, § 3202, made it a misdemeanor to "carnally know" a female under sixteen years of age "with her consent," and a felony if "by force and against her will." At least as to a minor defendant under sixteen years of age, the consent of the minor victim determined whether a crime had been committed. The use of the term "consent" makes clear that it means consent in fact without regard to her age.
¶ 52. Again, the recent amendment to the statute undercuts the majority's position. The Legislature narrowed the offense of statutory rape so that consensual sexual activity between a child at least fifteen years of age and another person of eighteen years of age or less is not statutory rape. 13 V.S.A. § 3252(c)(2) (2006). In doing so, the Legislature again used the term "consensual" in a context that makes clear it means consent in fact. Thus, under the amendment a fifteen year old is capable of consenting to sexual activity with an eighteen year old, but in the absence of such consent, the sexual activity is statutory rape. Again, the Legislature used the exact term the majority is construing in a way inconsistent with the majority's construction and in a statute that must be read in pari materia with the statute the majority is construing.[13]
¶ 53. Despite the statutory language, virtually all of the majority's rationale is based on cases that apply and explain the statutory rape provision, at least as it existed at some time in the past. The primary precedent is State v. Thompson, 150 Vt. 640, 644, 556 A.2d 95, 98 (1989), stating that "consent by a minor is not legally possible." The language is a description of why consent is not generally a defense *242 to statutory rape. It is not a quote from or construction of the statutory rape statute, or any other statute. No Vermont statute has ever stated that consent by a minor to a sexual act is legally impossible. Indeed, the statutory rape statutes have consistently made clear that consent of the minor victim is possible under specific circumstances and can be a full defense, making the statement in Thompson wrong if read as a description of those statutes. The majority has confused the rationale for a statute with its terms and acted as if the court-derived rationale is statutory language. Thompson and the other similar cases are not "decisions interpreting the very words we are called on to construe in this case," as the majority claims. Deyo, 2006 VT 120, ¶ 23 n. 5, ___ Vt. ___, 915 A.2d 249. They do not provide support for the majority's construction of consent as it is used in § 3253(a)(9). This conclusion is made particularly clear by the recent amendment that makes the efficacy of consent dependent both on the age of the victim and the age of the perpetrator.
¶ 54. We are not the first court to face the need to make our rhetoric on statutory rape consistent with the statutory language. This question is discussed in detail in People v. Hillhouse, 109 Cal.App.4th 1612, 1 Cal.Rptr.3d 261 (2003), where defendant argued that the statutory crime covering victims incapable of giving consent to sexual acts because of a disability did not apply to a minor victim because the victim was otherwise "incapable of giving legal consent to sexual acts." Id. at 263. In rejecting defendant's argument, the court discussed the dicta in court decisions that minors cannot consent to sexual acts:
In any event, even if we were inclined to do so, we perceive no need to restrictively interpret the language of these provisions, because in our view their plain language creates no impermissible overlap or conflict with the statutory provisions governing sexual contact with minors. Both the trial court and [defendant] have focused on the concept of "legal consent," reasoning that a minor's inability to give legal consent to sexual conduct due to age means that the Legislature could not have meant to include them among those who are unable to give legal consent due to mental disability. However, although common parlance (even that indulged in by courts) tends to suggest that minors cannot consent to sexual contact, none of the statutory provisions which specifically govern that contact says any such thing. To the contrary, the concept of consent, whether legal or actual, is actually irrelevant to the determination of whether those statutes have been violated.
The statutes . . . make no reference to a minor's ability or inability to consent to sexual contact. They merely implement a public policy making the described acts criminal without regard to such consent.
Id. at 267-68; see also Donaldson v. Dep't of Real Estate, 134 Cal.App.4th 948, 36 Cal.Rptr.3d 577, 588 (2005) (the phrase "age of legal consent" has "passed into lay usage and been incorporated into folk law"). Hillhouse exactly describes the situation before us in this case.[14]
*243 ¶ 55. The third inconsistency is with the provisions of § 3254, a statute that provides guidance to determine whether there has been consent, but again fails to mention that a minor cannot consent to a sexual act as the majority holds. The majority's response to defendant's reliance on this section is that "§ 3254 is not an exhaustive list of situations in which lack of consent may be found." Deyo, 2006 VT 120, ¶ 24, ___ Vt. ___, 915 A.2d 249. I agree that § 3254 is not exhaustive and is not intended to comprehensively address the meaning of lack of consent. Id. The latter function is assumed by the definition of consent in § 3251(3), which as discussed above is wholly inconsistent with the majority's holding. The section is, however, instructive.
¶ 56. In part, the section deals with the exact issue before us  the capacity of the victim to consent. Thus, § 3254(2)(A) provides that the defendant acted without consent where the defendant "[k]nows that the other person is mentally incapable of understanding the nature of the sexual act or lewd and lascivious conduct." There is no reason from the language why the lack of mental capacity cannot be caused by young age. Thus, if the majority's conclusion is correct, it is a glaring omission for the statute not to state that the perpetrator's knowledge is irrelevant if the lack of capacity is based upon young age and consent is impossible.[15] See Hillhouse, 1 Cal. Rptr.3d at 266-67 (emphasizing that the similar California statute concerning mental incapacity nowhere indicates that the victim must be an adult). Obviously, the statute relates to consent, in fact, and not consent in law as would be required by the majority's holding.
¶ 57. The third major objection to the majority's construction of "consent" is to the consequences of this construction as reached in Hazelton. The holding of Hazelton is that with respect to a victim under sixteen years of age, § 3252(a)(1)(A) and § 3252(a)(3), two of the statutes quoted above, set forth the same crime so that a defendant cannot be convicted under both. This is true primarily because the element of consent required for a conviction under § 3252(a)(1)(A) is met as a matter of law by the victim's age. Thus, the conclusion of Deyo that consent of a minor is legally impossible is now extended to hold that the Legislature improperly enacted two separate identical crimes and conviction of only one is valid. What Hazelton *244 really demonstrates is that the holding of Deyo is wrong, and the crimes are separate.
¶ 58. I believe that we have rejected the majority's analysis in the early case of State v. Wheat, 63 Vt. 673, 22 A. 720 (1891). In Wheat, the prosecution charged defendant with assault with intent to commit rape by assaulting the victim to carnally know and ravish her against her will. At trial, the prosecution met its proof burden by showing that the victim was under fourteen years of age, then the cut-off age for statutory rape. This Court reversed, holding that the prosecution had to prove that defendant acted without the consent of the victim, irrespective of the victim's age. We held:
The offence of having carnal knowledge of a female person against her will, is distinct from that of having carnal knowledge of one under the age of fourteen with her consent, although both offenses are rape. In the first offence, the question of age is not involved. In the second offence, it is the age of the victim which eliminates the element of consent.
Id. at 675, 22 A. at 720 (emphasis added). Under the majority's analysis in Hazelton, the question of age is centrally "involved" to the point that it is determinative.
¶ 59. The majority's reading of Wheat is that the result only occurred because the State charged defendant with rape, not statutory rape, and it was unfair for the prosecution to obtain a conviction without proving lack of consent. That reading is possible only if there is such an offense as nonconsensual rape of a young child, an offense the majority finds is impossible. Thus, under the majority's view of Wheat, the prosecution was required to prove the elements of a noncrime.
¶ 60. More important, the situation in Wheat as described by the majority is exactly the situation present in Hazelton. Over and over again  in opening argument, in closing argument, and in response to defendant's motion to dismiss one of the offenses  the prosecution stated that it had charged defendant with nonconsensual rape, as well as statutory rape, and assumed the burden to prove lack of consent in fact. If the prosecution could assume that burden in Wheat, it could do so here, and the nonconsensual rape charge contained an element  lack of consent in fact  not present in the statutory rape charge. Whether generally or in the context of the actual Hazelton charges, Wheat controls the disposition of Hazelton.
¶ 61. We should reach the same result if we look at the duplicative offense question the majority has decided. As the majority correctly points out, according to the analysis in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), two offenses are considered the same offense for double jeopardy purposes unless each statutory provision "requires [additional] proof of a fact which the other does not." State v. Grega, 168 Vt. 363, 382, 721 A.2d 445, 458 (1998) (citing Blockburger); see Hazelton, 2006 VT 121, ¶ 24, ___ Vt. ___, 915 A.2d 224. For our purposes, the most important aspect of the Blockburger analysis is that where one offense requires proof of a fact that the other does not, "the Legislature is presumed to have authorized cumulative punishment under the two statutory subsections because each subsection is presumed to define a distinct crime." State v. Ritter, 167 Vt. 632, 633, 714 A.2d 624, 625 (1998) (mem.) (emphasis added). It is this presumption of constitutionality that guides our double jeopardy analysis.
¶ 62. The majority claims that although "the differences between the two crimes may be apparent, they are not real." Hazelton, 2006 VT 121, ¶ 26, ___ Vt. ___, 915 *245 A.2d 224. In reaching this holding, the majority says that the "Legislature is free to punish the same conduct under two statutes, but its intent to do so must be clear." Id. ¶ 39. It is the corollary of this rule that is the most significant here, that each statute "is presumed to define a distinct crime." Ritter, 167 Vt. at 633, 714 A.2d at 625. If we apply that presumption, we must hold that the nonconsensual rape section, 13 V.S.A. § 3252(a)(1)(A), and the statutory rape provision, id. § 3252(a)(3), do define separate crimes.
¶ 63. The real problem with the majority's analysis is that the corollary, as stated in Ritter, is ignored. Despite the fact that Hazelton and Deyo are issued on the same day, the statutory construction problem is not analyzed with an understanding that the consequence of the statutory construction chosen in Deyo is that the Court must hold that the Legislature has adopted the same crime twice, although in entirely different wording. As Ritter says, the presumption is to the contrary, but that presumption never enters the analysis to suggest a different statutory interpretation  the interpretation in this dissent. As I said at the beginning, the advantage of considering both cases together is that this Court can see the full consequence of each ruling. The full consequence is ignored by the majority's analysis, and the Blockburger presumption as explained in Ritter is also ignored.
¶ 64. The obvious plain meaning of the statutory scheme is that the two subsections define separate crimes because consent in § 3252(a)(1)(A) means consent in fact as defined in § 3251(3). Thus, if an adult defendant commits a consented-to sexual act with another person of age fifteen or less, the defendant is guilty of statutory rape in violation of § 3252(a)(3). If the other person does not consent to the sexual act, and is compelled to participate, defendant is also guilty of sexual assault under § 3252(a)(1)(A). For purposes of this crime, consent is determined by the definition in § 3251(3) and not the age of the other person. In this case, the Blockburger presumption is consistent with the plain meaning of the language. Even if it were not, any ambiguity in the meaning of the statutes should be resolved under the Blockburger presumption.
¶ 65. This construction is consistent with the likely intent of the Legislature. Rather than intending to criminalize the exact same conduct twice, the Legislature drew a distinction between a circumstance where a minor consents to sexual activity without coercion and a situation where a minor is coerced into having sex. The latter is a separate and additional crime because of the presence of the coercion. This interpretation is supported by the presence of the word "compels" in § 3252(a)(1). The majority has read that word out of the statute, holding that each of the alternative elements in § 3252(a)(1)(A), (B) and (C) are alternative methods of compulsion. That may be a fair construction of (B) and (C) because each of these elements involve an element of compulsion. It is not a fair construction of (A), however, if the language means only that the victim is under sixteen years of age, because the majority has read compulsion out of the element. As the majority emphasizes, this is a strict liability crime provable only by "a calendar and the person's birth certificate." State v. Barlow, 160 Vt. 527, 530, 630 A.2d 1299, 1301 (1993); see Deyo, 2006 VT 120, ¶ 19, ___ Vt. ___, 915 A.2d 249. Thus, the Legislature's intent to criminalize only compelled behavior is violated by the majority's construction of § 3252(a)(1)(A).
¶ 66. Finally, I believe the weight of the decisions from other states is consistent with this dissent and not the majority analysis. *246 I say this recognizing that using persuasive authority on statutory construction questions must be done carefully because of differences in statutory language and schemes. In addition to Hillhouse, decisions that are inconsistent with the majority opinion, particularly in Hazelton, include People v. Tobias, 25 Cal.4th 327, 106 Cal.Rptr.2d 80, 21 P.3d 758, 758 (2001)[16] (the antecedent for Hillhouse); Donaldson, 36 Cal.Rptr.3d at 584-89; State v. Cahill, 252 Kan. 309, 845 P.2d 624, 627-28 (1993); Commonwealth v. Duffy, 832 A.2d 1132, 1138-41 (Pa.Super.2003); and May v. State, 919 S.W.2d 422, 423-24 (Tex. Crim.App.1996).
¶ 67. The most persuasive opinion, in a case on point with Hazelton, actually reaches the same result as the majority, but demonstrates what elements are necessary for the result. In State v. Stamper, 197 Or.App. 413, 106 P.3d 172 (2005), the court found that the elements of sexual abuse on a victim who did not consent were met by the age of the victim. Id. at 173. In reaching this conclusion, it recognized that requiring actual consent was "consistent with the ordinary meaning of the relevant terms" of the statute and "consistent with other statutes that suggest that the legislature understands that there is a difference between an actual lack of consent and legal incapacity to consent for any of several different reasons, one of which is the age of the victim." Id. at 177. Nevertheless, the court reached the opposite conclusion for two major reasons. First, Oregon has a statute that provides "[a] person is considered incapable of consenting to a sexual act if the person is . . . [u]nder 18 years of age." Id. at 175, 179-80 (quoting Ore.Rev.Stat. § 163.315(1)(a) and stating that to avoid the statute the court would have to "declare that [it] simply does not mean what it says and cannot be given the effect that it plainly describes"). Second, the majority relied upon specific Oregon legislative history demonstrating that its interpretation was the correct one. Id. at 178-79.
¶ 68. The elements determining legislative intent in Stamper are exactly what the majority does not have here. Stripped of these elements, the plain language of the statutes and every aid to statutory construction is against the construction in Deyo and double jeopardy holding in Hazelton.
¶ 69. Finally, I return to the central rationale of the majority  that its result is compelled by the common law. I agree that central to a resolution of this case is an understanding of how the current sexual assault statutes relate to the common law from which they are derived. I don't agree, however, that implicitly they have imported the common law rule on which the majority relies.
¶ 70. We are in this case engaged in the construction of statutes, and our paramount aim must be to determine the intent of the Legislature. All of the statutory construction rules that the majority cites are aids to determining legislative intent and must be viewed in this light. The ultimate question is whether the Legislature *247 intended to say that consent was impossible for the victim in Deyo and that § 3252(a)(1)(A) and § 3252(a)(3) create the same crime when the victim is a minor.
¶ 71. Like all statutory construction aids, the rules on using the common law reflect a balance between recognizing the common law where the Legislature intended to continue it and recognizing that the Legislature has the duty to define a different course from the common law where it thinks it appropriate. Thus, the rules cited by the majority create presumptions that can be overcome by evidence of what the Legislature actually did and are tempered by rules that counsel against excessive importation of the common law where there is no indication that the Legislature intended it. Thus, we cannot "extend common-law principles to extinguish express statutory language." Hitchcock Clinic, Inc. v. Mackie, 160 Vt. 610, 611, 648 A.2d 817, 819 (1993) (mem.). We can use the common law to interpret undefined words in a statute, State v. Oliver, 151 Vt. 626, 627, 563 A.2d 1002, 1003 (1989), but not where the Legislature defines the words it uses at variance with the common law. Most important for this case, a statute changes the common law if it "attempts to cover the entire subject matter." Langle, 146 Vt. at 516, 510 A.2d at 1303.
¶ 72. If ever there were a situation where the Legislature has sought to cover the entire subject matter of an issue, it is here. At least since the comprehensive reform of the sexual assault statutes in 1977, see 1977, No. 51, the Legislature has intended to cover the entire subject of criminal sexual assault, including statutory rape. By a definition of consent in § 3252(3) and an explanation of how lack of consent can be proved in § 3254, the Legislature has demonstrated that it specifically intended to comprehensively define consent and its relevance in criminal sexual assault cases. Nothing in these statutes provides any evidence that its precise statutory definitions of consent would be supplemented by a common law rule.
¶ 73. This is not a situation where the Legislature has abandoned the common law, and we must insist that it directly state so. Instead, the Legislature embodied the principles of the common law into a comprehensive definition of criminal liability for sexual assault. As I emphasized in the fourth paragraph of this dissent, the majority does not propose to enforce a common law rule; instead it is enforcing a rule it finds in legislative wording. Thus, it is using the common law as a justification for imposing a different statutory construction than that derived from the plain meaning of the statutory sections, the specific definitions the Legislature enacted, and the ordinary rules of statutory construction.
¶ 74. Finally on this point, even if the aids to statutory construction suggested that direction, I would not hold, as the majority has in Hazelton, that the Legislature intentionally voted to criminalize the same conduct twice. This consequence of the majority's statutory construction is strong evidence that the statutory construction is inconsistent with legislative intent.
¶ 75. For these reasons, I disagree with the statutory construction imposed by the majority. Thus, I vote as follows in the two cases before us. In Deyo, the trial court charged that the sexual acts were nonconsensual as a matter of law if the victim was under sixteen years of age. Contrary to the majority holding, I conclude that this instruction was error. Defendant failed, however, to object to the charge, and we can reverse only for plain error. See State v. Percy, 158 Vt. 410, 418, 612 A.2d 1119, 1125 (1992). I agree that there is no plain error here because *248 the sexual acts could not be considered consensual between father and daughter essentially for the reasons stated by the majority in Deyo. See Deyo, 2006 VT 120, ¶ 20, ___ Vt. ___, 915 A.2d 249. The Legislature appears to have adopted this view by defining as a sexual assault a parent's sexual act with his or her child if the child is under eighteen years of age. 13 V.S.A. § 3252(a)(4).[17] "Plain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." State v. Oscarson, 2004 VT 4, ¶ 27, 176 Vt. 176, 845 A.2d 337 (internal quotation marks and citation omitted). The error here does not rise to that level. Thus, I concur in the result in Deyo, but not in the reasoning the Court uses to reach that result. I note, in fact, that the majority's construction of 13 V.S.A. § 3253(a)(9) is totally unnecessary given its holding that the child could not consent to sexual acts with her father.
¶ 76. In Hazelton, the majority holds that defendant cannot be convicted of both sexual assault under § 3252(a)(1)(A) and statutory rape under § 3252(a)(3). I disagree. If the sexual act was nonconsensual in fact, the age of the victim is irrelevant under § 3252(a)(1)(A). If the victim is under sixteen years of age, defendant can also be convicted of statutory rape, a separate offense. I dissent from the majority's holding to the contrary.
¶ 77. I also note that even if I agreed with the majority in Hazelton on the meaning of the word "consent" in § 3252(a)(1)(A), I would still dissent from the holding. Although defendant did not acknowledge this in his briefing, the trial court agreed with his position that the offenses in § 3252(a)(1)(A) and § 3252(a)(3) are duplicative for the reasons stated in the majority opinion. The difference, if any, was in the remedy. After ruling in defendant's favor, the trial court held that the duplicative nature of the charges only affected the total sentence that could be imposed, such that the court could only impose two identical concurrent sentences. This is an arguable position in light of our language in State v. Grega, 168 Vt. at 388-89, 721 A.2d at 462-63, because this case does not involve lesser included offenses. After winning on the substance of his argument, defendant failed to object to the remedy the court adopted. Thus, defendant waived this issue.
¶ 78. We do not have to give guidance on this issue in light of the remand. The State has not appealed the ruling favorable to defendant, and it has become the law of the case, right or wrong.
¶ 79. Second, as I note above, even if Wheat holds what the majority says it does, the prosecution in this case affirmatively took on the responsibility to prove lack of consent in fact. Because the prosecution took on that responsibility, the offense it chose to prove under § 3252(a)(1)(A) is clearly different from the offense in § 3252(a)(3) and there are not duplicative convictions for the same conduct  in fact, one conviction is based on the victim's age and the second conviction is based on the lack of actual consent to the sexual act.
¶ 80. The third reason is the most important. The majority's construction of § 3252(a)(1)(A) not only misreads the element of "consent" in the case of a young victim, it totally eliminates the word "compels," which is an element of the offense. The logic of the majority opinion is that *249 the word "compels" adds nothing to "without . . . consent," so it is superfluous. Thus it holds that despite the fact that the statute applies only to a defendant who "compels" the victim to engage in a sexual act without consent, "no actual . . . compulsion is necessary to commit the offense." Hazelton, 2006 VT 121, ¶ 26, ___ Vt. ___, 915 A.2d 224. This holding defies every rule of statutory construction. It totally ignores the plain meaning of the statutory language, either in isolation or in context. See State v. Eldredge, 2006 VT 80, ¶ 7, 910 A.2d 816 (stating that if plain meaning of language is clear, we must enforce it). We reject a construction that renders part of the statutory language superfluous, exactly the result of the majority's construction. In re Margaret Susan P., 169 Vt. 252, 263, 733 A.2d 38, 47 (1999).
¶ 81. In support of its construction, the majority argues that the statute simply defines three different ways that the sexual act can be compelled, State v. Nash, 144 Vt. 427, 433, 479 A.2d 757, 760 (1984), and therefore compulsion is not an element of the offense. That argument makes sense only if the methods are examples of compulsion, and, as noted above, that is a strong argument why the majority's construction of "without consent" is wrong. If I have to accept that construction, however, it has a corollary: the fact that the age of the victim cannot remotely be seen as an example of compulsion undercuts the majority's holding that compulsion is not a separate element of the offense. I would hold that each offense has a separate element and conviction of both is permissible.
NOTES
[1] Defendant raised no objection to the jury instructions, and we express no opinion on this particular instruction. We note, however, that this instruction was consistent with the trial court's previous rulings  to which defendant properly objected and preserved  on the admissibility of the prior statements at issue for credibility purposes. In light of the court's previous rulings allowing the testimony under objection for this purpose, we doubt that an objection to the trial instruction would have made a difference. Nonetheless, even though we do not review the instruction itself for error, it is impossible to ignore the instruction in considering the prejudicial effect of the erroneously admitted testimony because we must consider the potential impact of the testimony on the jury.
[2] This does not, as the dissent complains, post, ¶ 63, ignore the Ritter corollary to Blockburger, that "each subsection is presumed to define a distinct crime." Ritter, 167 Vt. at 633, 714 A.2d at 625. The presumption stands only until it is determined that the subsections actually define the same crime. As explained, infra, when applied to a victim legally incapable of consent, subsection 3252(a)(1)(A) defines the same sexual assault as defined by subsection 3252(a)(3).
[3] Originally R. 1787, p. 30.
[4] After insisting that the Legislature recognizes consent to sexual contact by children under the age for statutory rape, the dissent appears to agree that such children could not capably consent to repeated sex with a parent. This class of children legally incapable of consent appear little different from other children who might be said to consent to repeated sexual contact with other older relatives, acquaintances, or even strangers. The spectacle of proving lack of "voluntariness," as the dissent understands this statutory scheme to require, post, ¶ 64, from such children who are often reticent or unlikely to testify effectively about the time of year, let alone about volition, would not seem to be contemplated by the Legislature absent an explicit declaration to that effect.
[5] Such clear expressions may be found in the recognition of consent for married minors under § 3252(a)(3) at issue in this case, and in its newly amended version explicitly extending consent to sexual contact between persons aged fifteen to nineteen. 13 V.S.A. § 3252(c)(2), amended 2005, No. 192 (Adj.Sess.), § 10.
[6] The dissent misstates that our "view" of Wheat would require that the prosecution "prove the elements of a noncrime." Post, ¶ 59. This is not a matter of viewpoint, but is exactly what Wheat said, wisely or not, due process required when the particular indictment in that case failed to inform defendant of the putative victim's age.
[7] To the extent that our analysis requires any reconciliation with Wheat and Sullivan, it would seem to be in the context of a charge of forcible rape under § 3252(a)(1)(B). The State would be precluded from pleading the age of a child as conclusive on the issue of coercion, and would bear the burden of proving compulsion by force or threats in fact, rather than incapacity to consent, beyond a reasonable doubt. Because the complainant's age in the forcible rape case would be irrelevant, the accused could, consistent with the due process concerns expressed in Wheat, respond with evidence of consent to the specific charge of actual threat or physical force.
[8] Section 3252(a)(3), previously defining "statutory rape," was replaced in 2006 with a new subsection (c) that maintained strict criminal liability for sexual contact "with a child who is under the age of 16, except . . . (2) where the person is less than 19 years old, the child is at least 15 years old, and the sexual act is consensual." 13 V.S.A. § 3252(c)(2) (emphasis added).
[9] The rule the majority constantly cites in Deyo  that a minor can't "consent to sexual relations with an adult"  has never been the common law. Putting aside whether the ability of a minor to "consent" is a statement of the common law or a rationale for the crime of statutory rape, a subject covered in detail infra in this dissent, the age element of statutory rape has never been set by the common law as that under the age of majority, and the age of the perpetrator did not matter under the common law. This misstatement of the common law is an example of how the majority keeps falling into "folk law" as its justification. See infra, ¶ 54.
[10] Again, I think it important to emphasize that this has never been the common law.
[11] The majority attempts to explain the marital exception by noting that third parties must give consent to marry. Deyo, 2006 VT 120, ¶ 21 n. 2, ___ Vt. ___, 915 A.2d 249. The explanation is beside the point. I rely on the marital exception only because it shows that when the Legislature uses the term "consent" and its derivatives, it means consent in fact without importing a common law rule on the ability of persons under a certain age to consent.
[12] The majority in Hazelton points out that this language was in the statute derived from England as part of the common law so it must, by definition, be consistent with the common law principle. I cite it only because it shows that when the Legislature uses the term "consent" and its derivatives, it means consent in fact and that is the usage we must apply to the statutes before us. The fact that the language came from the English statute is irrelevant.
[13] Again, the majority's attempt to explain the marital exception, Deyo, 2006 VT 120, ¶ 21 n. 2, ___ Vt. ___, 915 A.2d 249 doesn't explain it. Nevertheless, I stand by my point that the explanation is irrelevant.
[14] The majority argues that Hillhouse is inapposite because the California statutory scheme is different. Deyo, 2006 VT 120, ¶ 21, ___ Vt. ___, 915 A.2d 249. All statutory schemes are different, but the difference between Vermont and California does not undercut the comparison. The point of Hillhouse is that general statements about a minor's capacity to consent to a sexual act are only marginally helpful in interpreting a statute that does not refer at all to a minor's capacity to consent. That point is precisely the critical one here. On that point, the legislative direction in California is no clearer than that in Vermont with its explicit definition of "consent."
[15] The Deyo and Hazelton opinions are inconsistent in their criticism of this point. In Deyo the criticism is that § 3254(2) "simply" describes some instances where the "actor is deemed to have acted without consent." Deyo, 2006 VT 120, ¶ 24, ___ Vt. ___, 915 A.2d 249. In Hazelton, the criticism is that this dissent has recreated a mistake defense although we have clearly held that no such defense is available in State v. Searles, 159 Vt. 525, 527, 621 A.2d 1281, 1282-83 (1993). See Hazelton, 2006 VT 121, ¶ 30, ___ Vt. ___, 915 A.2d 224. Deyo is right that § 3254(2) describes instances where the defendant has acted without consent; nothing in this dissent or the statute suggests that it creates or amplifies defenses as charged in Hazelton. The charge that the dissent's construction of the statute appears "to extend the defense of consent to repeated sexual acts between an incestuous parent and an underage child," Hazelton, 2006 VT 121, ¶ 30, ___ Vt. ___, 915 A.2d 224 sounds more like a charge in a political campaign than anything that could be remotely derived from the language of the dissent. My point is that in describing an instance where lack of consent is deemed to be present as a matter of law, the instance before us in these cases, the Legislature has used language that means that consent must be viewed as consent in fact. Hazelton offers no other interpretation of the statutory language; indeed, no interpretation at all.
[16] The majority in Deyo analyzes Tobias at length to show that it is inapposite because it is based on a clear change of legislative direction adopted in 1970 in California. 2006 VT 120, ¶ 22. In fact, Vermont went through a comparable change of direction in 1977 when it repealed its rape statutes and adopted the current sexual assault statutes.1977, No. 51. Vermont also went through a recent substantial modification of its statutory scheme when it decoupled its sentencing provisions for statutory rape from those for sexual assault generally. Again, I emphasize that use of cases construing statutes from other jurisdictions must be done carefully, but add that the similarities between the Vermont and California schemes outweigh the differences.
[17] Under the recent amendment, this provision is now § 3252(d).