## State of Vermont v. James Hicks

[535 A.2d 776]

No. 85-259

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes,\* JJ.**

Opinion Filed August 14, 1987

Motion for Reargument Denied October 2, 1987

* Justice Hayes sat for oral argument but did not participate in this decision.

*Philip H. White*, Orleans County State's Attorney, Newport, for Plaintiff-Appellee.

*David W. Curtis*, Defender General, and *Henry Hinton*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from a conviction for committing lewd or lascivious conduct upon the body of a child, in violation of 13 V.S.A. § 2602. We affirm.

The conduct occurred on or about January 1, 1984, and was first reported at the beginning of March, 1984 when the six-year-old complainant told her babysitter that the defendant had undressed her and laid on top of her. The babysitter informed the child's mother, who brought the child to a physician. The physician examined the child and relayed relevant information to the Department of Social and Rehabilitation Services, which conducted an investigation in conjunction with the state's attorney's office, ultimately resulting in defendant's conviction.

The defendant claims that the trial court erred by admitting expert testimony about behavior of other children who had been sexually abused, improperly instructing the jury about defendant's alibi defense, and impermissibly allowing the State to use in its case-in-chief evidence of alleged threats made by the defendant to the victim.

At trial, the State offered expert testimony to show that delays in reporting incidents of sexual assault or sexual abuse are common among children who are the victims of such abuse. Defendant claims that the State's expert was not sufficiently qualified as an expert to testify, and, if she was so qualified, that her testimony was inadmissible.

■■ A trial court has discretion to admit expert testimony if it "will assist the trier of fact to understand the evidence . . . ." V.R.E. 702.[1] Whether the qualifications of an expert have been properly established is a matter left to the discretion of the trial court. *Northern Terminals, Inc.* v. *Smith Grocery & Variety, Inc.*, 138 Vt. 389, 392-93, 418 A.2d 22, 24 (1980). The State's proposed expert witness's qualifications included a B.A. in elementary education and a master's degree in social work with specialization in children. She had attended at least one state workshop, has pursued various studies in the area of sexual abuse, and at the time of her testimony, was employed as a children's social worker for Northeast Kingdom Mental Health. She had been employed there for five years, and had counseled eighteen children, nine of whom were under the age of sixteen, who had reported sexual abuse in the latter two of those five years. Rule 702 makes

---

[1] V.R.E. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

it clear that the expertise or skill of an expert witness may arise from either training, experience or education. See also *State* v. *White*, 142 Vt. 73, 77, 451 A.2d 1137, 1139 (1982) ("Skill, knowledge, and experience above and beyond that of the average juror are each an adequate basis upon which to qualify an expert."). The court's determination was not erroneous, *Northern Terminals*, 138 Vt. at 392, 418 A.2d at 24, and the State's witness was properly allowed to testify as an expert. See also *State* v. *Bubar*, 146 Vt. 398, 402-03, 505 A.2d 1197, 1200 (1985) (witness who had assisted four rape victims over a period of four and one-half years, had attended several training sessions and was familiar with the literature qualified as expert).

The defendant has also challenged the substance of the expert's testimony. Defense counsel cross-examined the complainant's mother concerning the complainant's three-month delay in reporting the assault. The State's expert then testified in rebuttal that fear may prevent abused children from reporting an incident for a long period of time. We conclude that the testimony was properly admitted. The behavioral patterns of child victims of sexual abuse are generally not known to the average juror and are therefore a proper subject for expert testimony. See *State* v. *Catsam*, 148 Vt. 366, 369, 534 A.2d 184, 187 (1987). Reporting problems, and the fact that children are not necessarily inclined to immediately recount an incident of sexual abuse, are complicated issues warranting expert testimony. *Id.*

The testimony did not, as defendant argues in his brief, "improperly bolster the credibility of the complainant." The expert did not testify on the complainant's credibility but addressed only the parameters of reporting, and whether it is common for child victims of sexual abuse to delay telling someone what occurred. "The fact that the jury, if it believes the expert's testimony, may draw inferences which would tend to bolster the victim's credibility does not make the evidence inadmissible. . . . [S]o long as the expert does not render an opinion on the accuracy of the victim's recitation of facts, his or her general testimony on the dynamics of sexual abuse does not prejudice the jury." *Commonwealth* v. *Baldwin*, 348 Pa. Super. 368, 376-77, 502 A.2d 253, 257 (1985); cf. *Catsam*, 148 Vt. at 371, 534 A.2d at 188 (reversible error to admit expert testimony regarding tendency of post-traumatic stress disorder victims to tell the truth about incidents of sexual abuse).

Defendant's reliance on *State* v. *Percy*, 146 Vt. 475, 507 A.2d 955 (1986), is misplaced. In *Percy*, we determined that the State's expert witnesses had not testified about profile or syndrome evidence, but had testified about the characteristics of other defendants in other rape cases. *Id.* at 482-84, 507 A.2d at 959-60. Their testimony was inflammatory and prejudicial and went directly to the question of defendant's guilt by association with other defendants. *Id.* at 484-85, 507 A.2d at 960-61; accord *Hall* v. *State*, 15 Ark. App. 309, 316-17, 692 S.W.2d 769, 773 (1985) (expert testimony which focused attention of jury upon whether evidence against defendant matched evidence in "usual" case of sexual assault held destructive and prejudicial). Defendant argues that the testimony of the State's expert in this case similarly prejudiced him through guilt by association.

The testimony elicited upon direct examination in *Percy* must be distinguished from the situation in this case, where the defense has attacked a witness for the State, and evidence is offered to explain the testimony of that witness. See *State* v. *Claflin*, 38 Wash. App. 847, 852, 690 P.2d 1186, 1190 (1984) (social worker's rebuttal testimony that late reporting was not unusual among sexually abused children held admissible where defendant attempted to discredit witnesses by emphasizing their delay in reporting abuse). Prior to the expert's testimony, the State indicated to the bench that the expert's testimony was being offered "to explain, for example, why [children] might wait two or three months before telling somebody . . . . [T]he extent of the question I intend to ask of this witness is whether in her experience . . . such delays in reporting are common . . . ." The trial judge allowed the expert to testify, agreeing with the State that her testimony was "at best neutralizing statements made [by the defense] in cross-examination of the [complainant's] mother as to the length of the delay." The testimony was not inflammatory, and did not, as in *Percy*, go directly to the question of defendant's guilt by association with other guilty perpetrators. Her rebuttal testimony merely explained that delays in reporting among child victims of sexual abuse are not uncommon. It did not prejudice the defendant by associating him with other abusers. Cf. *Percy*, 146 Vt. at 483-84, 507 A.2d at 961.

Defendant's second claim on appeal is that the trial court improperly instructed the jury about permissible inferences that could be drawn if the jury disbelieved defendant's alibi defense.

Defendant argues that the trial court erred by not instructing the jury that they must believe "beyond a reasonable doubt" that defendant's exculpatory statement was "deliberately and knowingly false" before they could infer guilt from the statement.

■ While the defendant made an objection to the charge at the charge conference and at the conclusion of the charge, it was not made on the ground argued here and was not preserved for our review. *State* v. *Kerr*, 143 Vt. 597, 606, 470 A.2d 670, 674-75 (1983). A party may not assign as error any portion of a charge unless the objection distinctly states the matter to which the objection is taken and the grounds therefor. V.R.Cr.P. 30. The charge as given, read in its entirety, was appropriate and did not constitute plain error. V.R.Cr.P. 52(b). Cf. *State* v. *Wilkins*, 144 Vt. 22, 25-26, 473 A.2d 295, 297 (1983).

Defendant's third claim on appeal is that the trial court erred by admitting evidence that he had allegedly threatened the complainant with harm if she disclosed the incident. Defendant argues that this evidence of alleged threats constitutes evidence of "other bad acts," is highly prejudicial, and necessitates reversal. See V.R.E. 404(b). Although defendant asserts correctly that evidence of other wrongs or acts is inadmissible to show a propensity on the part of a defendant to act in conformity therewith, *State* v. *Moran*, 141 Vt. 10, 19, 444 A.2d 879, 883 (1982), defendant's argument is without merit.

■ Defendant objects to the testimony of three witnesses which indicated that the victim had "express[ed] fear," said "she was scared," and "was very angry and was afraid."[2] The testimony relating to the victim's fear referred only to the incident forming the basis for the charge, and was probative with respect to reasons for complainant's delay in reporting. It did not, as defendant urges, constitute evidence of other bad acts.

*Affirmed.*

---

[2] The complainant's mother testified that the complainant had told her that the defendant had threatened her life and that if she told "she would get the same thing only worse next time." Upon objection and a motion for mistrial by defense counsel, the trial court struck this answer and instructed the jury that it was not to be considered.