# State of Vermont v. Carroll Perry

[563 A.2d 1007]

No. 87-068

Present: **Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed June 16, 1989

*Marc D. Brierre, Rutland County Deputy State's Attorney,* Rutland, for Plaintiff-Appellee,

*Walter M. Morris, Jr., Defender General,* and *Henry Hinton, Appellate Defender,* Montpelier, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals his conviction, following a jury trial, of driving under the influence (DUI), serious injury resulting, 23 V.S.A. §§ 1201(a)(2), 1210(f), and simple assault, 13 V.S.A. § 1023(a)(1).[1] We affirm.

The charges leading to the convictions were brought following a four car collision in Clarendon, Vermont. It was alleged that defendant, while under the influence of intoxicating liquor, drove one of the automobiles involved in the accident north in the

---

[1] The defendant was tried for the offenses of DUI, serious injury resulting and aggravated assault, 13 V.S.A. § 1024(a)(1). The jury found the defendant guilty of the DUI charge, not guilty of aggravated assault and guilty of simple assault, which was submitted to the jury as a lesser included offense of aggravated assault.

southbound passing lane of Route 7, thereby causing the accident and resulting serious injuries. At trial, the defendant maintained that the State could not prove that he was the operator of the north bound vehicle or that he was intoxicated.

On appeal, defendant contends that: (1) the DUI conviction must be reversed because the trial court gave contradictory instructions; (2) the legislature did not intend that he could be prosecuted for aggravated assault on the facts presented; (3) the instruction on DUI, serious injury resulting, was confusing; and (4) the trial court erred by permitting testimony by an unqualified expert.

## I.

■ The trial court submitted a worksheet to the jury to assist in its deliberations. The worksheet called for the jury to indicate by the signature of its foreman whether the defendant was guilty or not guilty of each of the submitted offenses. With respect to the DUI, serious injury resulting charge, the worksheet read as follows:

> A. We, the jury, find the defendant, Carrol L. Perry, of the offense of Driving Under the Influence of Intoxicating Liquor, with injuries to another resulting;
>
> Not Guilty__
> Guilty__

The defendant argues that the worksheet misstated the DUI charge in a critical respect by omitting the requirement that serious injury be proved.[2] According to defendant, the written worksheet contradicted the court's oral instructions and was, therefore, likely to mislead the jury.

Defendant's contention may be quickly disposed of. The defendant stipulated that the injuries were serious and the jury was so instructed. The serious injury issue had been conceded and the error, if any, was not prejudicial to the defendant. Moreover, defense counsel were afforded the opportunity to examine the worksheet before it was given to the jury and made no objection to its use or to the language. A claimed error in jury instructions can be

---

[2] Defendant concedes that "[i]n its oral charge to the jury, the trial court correctly advised that the DUI charge required proof that *serious* injury to another resulted."

raised on appeal only if objection is made after delivery of the charge. *State* v. *Lettieri*, 149 Vt. 340, 342, 543 A.2d 683, 686 (1988).

## II.

Defendant next argues that the absence of language in the DUI with serious injury resulting statute, 23 V.S.A. § 1210(f), expressly allowing concurrent prosecution under the general provisions of the criminal law, evinces an intent, on the part of the legislature, to preclude such prosecutions. Thus, defendant argues, it was error for the State to charge and try him for aggravated assault.[3] Defendant notes that 23 V.S.A. § 1210(e) (DUI with death resulting) contains language not present in § 1210(f), namely that the "provisions of this section do not limit or restrict prosecutions for manslaughter." He contends that the difference between these two provisions demonstrates the legislature's intent that a prosecution under the DUI law would "limit or restrict prosecutions" for assault.[4]

The only authority cited by defendant in support of his argument is *People* v. *Bagby*, 734 P.2d 1059 (Colo. 1987), in which the Supreme Court of Colorado affirmed the dismissal of an information charging the defendant with the felony offense of offering a false instrument for recording, § 18-5-114, 8B C.R.S. (1986). Applying the principle that "enactment . . . of a specific criminal statute does not preclude prosecution under a general criminal statute unless a legislative intent is shown to limit prosecution to the special statute," the court determined that such an intent existed with regards to the Liquor Code, §§ 12-47-101 to -143, 5

---

[3] Title 23 is a compilation of laws relating to motor vehicles including offenses involving operation. Title 13 contains statutes relating to crimes and criminal procedure, including assault.

[4] 23 V.S.A. §§ 1210(e) and (f) read as follows:

(e) Death resulting. If the death of any person results from a violation of section 1201 of this title, the person convicted of the violation shall be fined not more than $3,000.00, and imprisoned not less than one year nor more than 15 years. The provisions of this section do not limit or restrict prosecutions for manslaughter.

(f) Injury resulting. If serious bodily injury, as defined in 13 V.S.A. § 1021(2), results to any person other than the operator from a violation of section 1201 of this title, the person convicted of the violation shall be fined not more than $3,000.00, or imprisoned not less than one year nor more than 15 years, or both.

C.R.S. (Supp. 1985, 1986), and that defendant should have instead been charged with violation of specific liquor code provisions and regulations, which also criminalized the conduct. *Id.* at 1061-62. According to the court, an intent to limit prosecutions to the Liquor Code was evident, in part, from the presence in the code of sections providing that certain prohibited conduct be prosecuted as felonies under distinct sections of the criminal code. *Id.* at 1062 (referring to Liquor Code provisions § 12-47-105(3), authorizing prosecution for first degree perjury, and § 12-47-128(5)(n)(II), authorizing prosecution for certain gambling practices). As the court noted:

> The designation of a very few violations as matters to be prosecuted under provisions of the Criminal Code strongly indicates a legislative determination that all other violations of the Liquor Code shall be prosecuted as provided by the penal provisions of the Liquor Code itself.

*Id.*

The provisions relied on by the Colorado court in *Bagby*, however, differ in a material way from those at issue in the present case. The Colorado Liquor Code provides that certain misconduct be punished under the general criminal code only, whereas § 1210(e) prescribes its own penalties as well as allowing for simultaneous prosecution and punishment for manslaughter. Although the existence of provisions in the Colorado Liquor Code requiring that certain proscribed conduct be punished under the general criminal code may evince an intent on the part of that legislature that all other violations under their Liquor Code be punished as provided in the specific penalty provisions therein, the wording of Vermont's DUI penalty provision, 23 V.S.A. § 1210, fails to demonstrate a similar intent.[5]

■ Section 1210(e) merely restates the common law that a jury may convict a defendant of two distinct crimes such as driving under the influence with death resulting and manslaughter even

---

[5] Had the legislature intended to restrict punishment for the misconduct described in 23 V.S.A. § 1210(f) to the penalties set forth in that section, it could have so provided as it did with regards to the driving under the influence offenses set forth in 23 V.S.A. § 1201(a). Section 1201(f) expressly prohibits the conviction of an individual for "more than one offense under this section arising out of the same incident." Section 1210(f) does not contain comparable language.

where both arise out of the same act. *State* v. *Poirier*, 142 Vt. 595, 599, 458 A.2d 1109, 1111 (1983). The failure to include similar language in § 1210(f) does not indicate a legislative intent to change the common law rule. As this Court has noted on several occasions, "the same act may constitute two separate crimes, and, if they are not so related that one of them is a constituent part, or necessary element, in the other, so that both are in fact one transaction, a prosecution and conviction may be had for each offense." *State* v. *Parker*, 123 Vt. 369, 371, 189 A.2d 540, 541-42 (1963). See also *State* v. *Forbes*, 147 Vt. 612, 617, 523 A.2d 1232, 1235 (1987). It is within the prosecutor's discretion to determine which overlapping criminal offenses established by the facts should be charged, and we will not interfere with the exercise of this discretion without a statement by the legislature that such an infringement is intended.[6] See *United States* v. *Batchelder*, 442 U.S. 114, 124 (1979); *State* v. *Angelucci*, 137 Vt. 272, 279-80, 405 A.2d 33, 37 (1979); 2 W. LaFave & J. Israel, Criminal Procedure § 13.7, at 225 (1984). Legislative silence on such an important issue cannot suffice as evidence of the legislature's intent.

### III.

Defendant's third argument is that the trial court committed error by elaborating on only the element of intoxication when instructing the jury on the DUI, serious injury resulting charge. According to the defendant, the court's focus on this element was misleading and tended to overemphasize one issue relating to § 1210(f) while underemphasizing the significance of the other elements. The core of defendant's argument is that the jury charge failed to adequately instruct the jury about his primary trial defense, that someone else was the operator of the car alleged to be the cause of the accident.

An examination of the record discloses that defendant did not object to this portion of the jury charge, and our review of his argument is therefore limited to determining whether the instruc-

---

[6] The language in § 1210(e) forming the basis of the defendant's argument was first added to § 1210 by Senate Bill 208 in 1981. Before being signed by the Governor on April 22, 1982, S. 208 was considered by both the Senate Committee on the Judiciary and the House Committee on Transportation. Nothing in the records of either committee during the time period in which the bill was under consideration requires a result different from that reached by the Court today.

tion was plain error. *State* v. *Neale,* 145 Vt. 423, 430, 491 A.2d 1025, 1030 (1985); *State* v. *Morrill,* 127 Vt. 506, 511, 253 A.2d 142, 145 (1969) ("In order to reach the question attempted to be raised we must first decide whether this is one of those rare and extraordinary cases where a glaring error occurred during the trial and was so grave and serious that it strikes at the very heart of the [defendant's] constitutional rights.").

Though the trial court, in its instructions, placed special emphasis on the intoxication element of the DUI charge, it also instructed the jury in accordance with defendant's request that "if you find that the defendant was not the operator of the motor vehicle, he may not be convicted of either offense, because that is an element that is common to both offenses charged." This additional instruction adequately advised the jury regarding defendant's theory of defense and removed any effect of the alleged overemphasis on the intoxication element. The instructions were not plain error.

## IV.

Defendant finally argues that it was error for the trial court to permit Captain Fish, an expert in investigation and reconstruction of motor vehicle accidents, to testify that it was his opinion that the defendant was "behind the wheel." According to defendant, Captain Fish was qualified to testify only as to what occurred outside the vehicle and not inside the vehicle's passenger compartment.

Whether a witness may testify as an expert, pursuant to V.R.E. 702, is a matter left to the discretion of the trial court. See *State* v. *Hicks,* 148 Vt. 459, 461, 535 A.2d 776, 777 (1987); see also *State* v. *White,* 142 Vt. 73, 77, 451 A.2d 1137, 1139 (1982). "Rule 702 makes it clear that the expertise or skill of an expert witness may arise from either training, experience or education." *Hicks* at 461-62, 535 A.2d at 777. Here, the qualifications of Captain Fish included: employment with the state police for over twenty-five years with a specialization in traffic accident investigations, experience observing how mock car crashes affect dummy passengers placed in the vehicles to simulate human occupants, and job related exposure to the effects of forces generated in an automobile crash on the passengers of the vehicles involved. With regards to his experience investigating accident scenes, Captain Fish testi-

fied that "[p]art of the investigation is to try to determine what part of the vehicle the operators or the occupants collide with, inside the vehicle." Despite his lack of specific training concerning the relationship of a passenger's injuries to his position in the car immediately prior to the accident, Captain Fish had enough pertinent experience to qualify as an expert with regards to the defendant's position in the automobile at issue here. It was, therefore, not an abuse of discretion for the court to allow his testimony. "Though it is for the court to judge, in the first instance, whether witnesses introduced as experts possess sufficient skill to entitle them to give an opinion, it is for the jury to determine from the testimony whether such experts have sufficient skill to render their opinion of any importance." *State* v. *Bishop,* 128 Vt. 221, 228, 260 A.2d 393, 398 (1969) (citation ommitted).

*Affirmed.*