2009 VT 93

### State of Vermont v. Sherrill Hazelton

[987 A.2d 915]

No. 08-113

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 21, 2009

*Christina Rainville*, Bennington County Chief Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant appeals his convictions and sentence arising from charges of sexual assault. On appeal, defendant asserts that the trial court erred by allowing the State to present its case to the jury as one involving two counts of sexual assault and allowing the jury to convict him on both counts, notwithstanding our decision in *State v. Hazelton*, 2006 VT 121, 181 Vt. 118, 915 A.2d 224 (*Hazelton I*). Defendant also contends that the trial court erred by permitting the State to introduce certain expert testimony and by sentencing him to a greater prison term following his conviction after a successful appeal. We affirm.

¶ 2. In *Hazelton I*, we considered several claims of error regarding defendant's second jury trial stemming from charges that he sexually assaulted S.L., the then ten-year-old niece of his girlfriend, while babysitting S.L. and her younger sister.[1] We reversed defendant's convictions and remanded the case to the trial court in *Hazelton I* because we found that the court erred in

---

[1] Defendant's first trial resulted in a mistrial because a juror, citing a conflict after hearing some testimony, was excused. Defendant chose not to proceed with an eleven-member jury.

allowing the State to introduce certain hearsay evidence against defendant. *Id.* ¶ 1. More importantly for purposes of this appeal, we also gave explicit guidance to the trial court to apply on remand regarding whether defendant could again be convicted and sentenced on the two charges filed by the State. Specifically, we said that defendant could not be convicted and sentenced for violating both 13 V.S.A. § 3252(a)(1)(A) and § 3252(a)(3); to do so would expose defendant, contrary to well-settled double jeopardy principles, to multiple punishments for the same offense.[2] See *Hazelton I,* 2006 VT 121, ¶¶ 24, 39; see also *State v. Grega,* 168 Vt. 363, 382, 721 A.2d 445, 458 (1998) ("The guarantee against double jeopardy prevents . . . the imposition of multiple punishments for the same offense." (citing *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)). The two charges are the same offense, we concluded, because "[t]he substantive elements of criminal sexual contact with an unmarried minor under the age of sixteen under § 3252(a)(3) are the same as the substantive elements of sexual assault compelled 'without . . . consent' under § 3252(a)(1)(A)." *Hazelton I,* 2006 VT 121, ¶ 24. Both would punish defendant for engaging in a single sexual act with S.L., an unmarried minor, who could not, as a matter of law, have consented to the act. *Id.* ¶ 39. As a minor, S.L. automatically would be deemed, therefore, to have been subject to compulsion for purposes of § 3252(a)(1)(A). *Hazelton I,* 2006 VT 121, ¶ 38 (citing *State v. Nash,* 144 Vt. 427, 433, 479 A.2d 757, 760 (1984)). Further, although we noted that the Legislature may constitutionally "punish the same conduct under two statutes," we held that the Legislature did not intend for cumulative punishment to attach to the commission of a single nonconsensual sexual act in violation of both § 3252(a)(1)(A) and § 3252(a)(3). *Hazelton I,* 2006 VT 121, ¶ 39.

¶ 3. Notwithstanding our admonition in *Hazelton I,* defendant was retried on the same two counts — one count of violating § 3252(a)(3) and one count of violating § 3252(a)(1)(A) — over his repeated objection. Indeed, from the outset of the trial, his third, defendant sought to force the State to elect a single charge as the basis for its prosecution. The trial court, however, read *Hazelton I* to allow the State to present both charges to the jury, and to allow the jury to convict defendant on both charges, if the trial

---

[2] All references herein to 13 V.S.A. § 3252 and subsections thereof refer to the version of the statute in effect prior to its general amendment in 2006.

court subsequently vacated one of the convictions, obviating the need for sentencing on that count. Accordingly, the trial court instructed the jury as follows: "[defendant] is charged with two separate counts. Each count alleges a separate offense. . . . It is possible for you to find [defendant] guilty on both counts, . . . guilty on one but not the other, or not guilty on both counts." The jury found defendant guilty of both counts. Subsequently, the trial court dismissed the count of violating § 3252(a)(3). At the sentencing hearing, the court sentenced defendant to nineteen-to-twenty-years imprisonment for violating § 3252(a)(1)(A). Previously, at the conclusion of his second trial, defendant had been sentenced to eighteen-to-twenty-years imprisonment.

I.

■ ¶ 4. The gravamen of defendant's first argument on appeal is that, following our ruling in *Hazelton I*, it is clear that the two counts charged and tried by the State are multiplicitous. Defendant is correct in his assertion; both counts charge the same offense, see *Hazelton*, 2006 VT 121, ¶ 24, and are, therefore, multiplicitous. See Reporter's Notes, V.R.Cr.P. 8 ("A pleading is bad for multiplicity if it alleges one offense in several counts."); 1A C. Wright & A. Leipold, Federal Practice and Procedure § 142, at 10 (4th ed. 2008) (" 'Multiplicity' is charging a single offense in several counts."). Trials conducted pursuant to multiplicitous counts present two chief problems: first and foremost, they may lead to a defendant receiving multiple punishments for the same offense, a double jeopardy violation; second, they generate a concern that the "prolix pleading[s] may have some psychological effect upon [the] jury by suggesting to it that [the] defendant has committed not one but several crimes." 1A Wright & Leipold, *supra*, § 142, at 11 (quotation omitted).

■ ¶ 5. Thus, defendant's convictions on both counts were in error; to avoid a double jeopardy violation, as our decision in *Hazelton I* clearly stated, upon his retrial, "defendant c[an] be convicted and sentenced for only *one* of the two counts." 2006 VT 121, ¶ 24 (emphasis added). The trial court, however, remedied this error by dismissing the count charging a violation of § 3252(a)(3). Having been impermissibly convicted of two legally identical charges, defendant now stands convicted on only one charge and has received one sentence for it. Thus, the trial court's action

addressed the primary "vice" of multiplicity, the receipt of multiple punishments for the same offense. See 1A Wright & Leipold, *supra*, § 142, at 11 (collecting cases).

¶ 6. The State misconstrues *Hazelton I* as prohibiting the trial court only from sentencing defendant on both counts. Admittedly, in a section addressing the punishment that may attach should defendant be convicted upon retrial, *Hazelton I* states that "only one sentence may be imposed in the event of conviction." 2006 VT 121, ¶ 39. Viewed in the context of the decision, however, it is clear, as noted above, that defendant may not be convicted or sentenced on both counts.

■ ¶ 7. Moreover, to the extent the State relies on *Grega* to the contrary, that reliance is misplaced. The defendant in *Grega* was tried, convicted, and sentenced for aggravated murder and aggravated sexual assault. On appeal, he argued that the offenses were the same for double jeopardy purposes. We agreed, concluding that the Legislature may provide for multiple punishments for the same offense pursuant to two (or more) statutory sections or subsections, but, where it has not, double jeopardy prevents the State from attaining multiple convictions and imposing multiple sentences for what is, in effect, a single crime. See *Grega*, 168 Vt. at 382, 387, 721 A.2d at 458-59, 462. Although we initially vacated only the defendant's sentence for aggravated sexual assault, *id.* at 388, 721 A.2d at 462, on the defendant's motion for reargument, we concluded that double jeopardy considerations required us to vacate his conviction for that offense as well. *Id.* at 389, 721 A.2d at 462-63. It is clear from *Grega*, therefore, that a criminal conviction is also punishment for purposes of the constitutional protection against multiple punishments for the same offense.

■ ■ ¶ 8. The court also erred in denying defendant's request to require the State to elect between the charges. See Reporter's Notes, V.R.Cr.P. 8 (observing that the proper course of action regarding multiplicitous charges is election at trial). Contrary to the State's assertion, Vermont Rule of Criminal Procedure 13(a) does not allow the court to permit the prosecution to proceed to trial on multiplicitous charges. Instead, Rule 13(a) merely allows the court to "order two or more indictments or informations or both to be tried together" if otherwise properly joined. As the Reporter's Notes to Rule 8 make abundantly clear, multiplicitous charges cannot properly be joined.

■ ¶ 9. We also disagree with the State's assertion that "manifest injustice" will result if we find, as we do, that the court erred in allowing the State to try defendant on both charges. Such a finding will not endanger the State's prosecutorial discretion. First, it is elementary that the State's broad prosecutorial discretion is subject to judicial review and is always bounded by, among other things, constitutional considerations and our rules of criminal procedure. Second, nothing in our decision today limits the State's ability to seek convictions for the same criminal act under different statutory provisions — if the Legislature has so provided and our Constitution and rules of criminal procedure so allow.

¶ 10. The issue remains whether defendant was prejudicially harmed by the court's error in allowing the State to proceed on multiplicitous charges. See *State v. Oscarson*, 2004 VT 4, ¶ 29, 176 Vt. 176, 845 A.2d 337 ("[W]e may uphold [a] defendant's criminal conviction[] 'if we find that the error was harmless beyond a reasonable doubt.'" (quoting *State v. Lipka*, 174 Vt. 377, 384, 817 A.2d 27, 33 (2002))); V.R.Cr.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); cf. *United States v. Lane*, 474 U.S. 438, 444-46, 450 (1986) (under federal rules of criminal procedure, misjoinder subject to harmless error analysis). Defendant argues that his remaining conviction should be reversed because, by failing to require the State to elect one charge on which to proceed, the court "violated [his] fair trial rights" by allowing the State to "mak[e] it appear to the jury that he did two bad things, instead of one."

¶ 11. The strength of the State's case against defendant is comparable to that put forth in *Oscarson*, wherein a defendant was charged with sexually assaulting her two young children. 2004 VT 4. There, we characterized the prosecution's evidence against the defendant with respect to one of her children as "extremely powerful" much as the evidence is in this case. *Id.* ¶ 48. Such a comparison leads us to conclude that defendant's conviction was negligibly affected, if at all, by the multiplicitous charges. See *United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) (assuming that the trial court's denial of the defendant's pretrial motion to dismiss a multiplicitous count amounted to an abuse of discretion, such error was harmless in light of "overwhelming" evidence of the defendant's guilt). In *Oscarson*, we noted that, at trial, the child victim gave graphic testimony describing the abuse

he suffered at the hands of his mother. By testifying, the child was subject to cross-examination that tested his veracity, and "the jury had a full opportunity to observe and weigh [his] demeanor and credibility." *Oscarson*, 2004 VT 4, ¶ 48. The prosecution also introduced considerable circumstantial evidence, including expert testimony stating that the child's ongoing abnormal behaviors were "consistent with sexual abuse and post-traumatic stress disorder." *Id.* ¶¶ 51-53. This evidence "in particular," we concluded, "strongly corroborat[ed]" the child's allegations of abuse. *Id.* ¶ 57.

¶ 12. Here, notwithstanding the State's insistence upon trying defendant with two crimes, S.L. testified to one instance of assault when she was ten years old. She described to the jury in considerable detail how defendant assaulted her while pinning her down by grabbing and pressing on her neck. She did not tell anyone of the assault for several months but finally did so upon learning that another young, female relative would be staying at defendant's home. S.L. also testified as to a number of medical issues she began having subsequent to the assault, including nightmares and a variety of neurological problems.[3] The defense extensively cross-examined S.L.

¶ 13. The State's exhibits, chiefly S.L.'s medical records, and other witnesses corroborated the material points of S.L.'s testimony. S.L.'s mother testified that, after the assault, S.L. inexplicably began experiencing nightmares, migraines, fainting spells, and personality changes for which they sought medical treatment. A medical doctor that examined S.L., albeit several months after the assault, testified that S.L.'s genitalia exhibited scarring not inconsistent with sexual assault. Most significantly, for the first time the State brought forth expert testimony[4] tending to show that S.L.'s testimony and medical records regarding the various emotional and neurological issues she experienced following the assault were consistent with (1) the symptoms of post-traumatic stress disorder, and (2) sexual abuse generally.

■ ¶ 14. While it is perhaps arguable whether the State's case in the matter at hand can be appropriately described as "ex-

---

[3] The State appears to have taken a different tack with respect to presenting evidence in defendant's third trial. Instead of focusing on S.L.'s consistency with regard to her allegation of assault, as it had in defendant's second trial, the State highlighted S.L.'s otherwise-unexplained emotional trauma following the assault as evidence that the assault did, in fact, take place.

[4] Part II, *infra*, discusses a different aspect of this same testimony.

tremely powerful," *Oscarson*, 2004 VT 4, ¶ 48, given the similarities to the prosecution's case in *Oscarson*, the State's case here was very strong; any effect the multiplicitous counts might have had on the jury, therefore, would have been de minimis. Thus, we conclude that the court's failure to require the State to elect to proceed on only one of the multiplicitous counts, though error, was harmless beyond a reasonable doubt.[5]

## II.

¶ 15. Defendant also contends that the trial court erred in permitting certain testimony of one of the State's expert witnesses over his numerous objections at trial. Among other things, this witness, a psychologist, testified that, in his opinion, most children delay disclosing that they have been sexually assaulted. He also testified as to the findings of a specific research study wherein the study's authors found that seventy-nine percent of children delay disclosing that they have been assaulted. Moreover, the expert observed that S.L.'s testimony regarding her delay in disclosing the alleged assault was consistent with what he had observed in his own practice and read in the literature regarding the profile of sexually assaulted children. Allowing this testimony was improper, according to defendant, because it, in effect, vouched for the truthfulness of complainant's allegations of sexual assault.

¶ 16. The trial court enjoys broad, though not boundless, discretion in deciding whether to admit expert testimony. See *State v. Catsam*, 148 Vt. 366, 371, 534 A.2d 184, 188 (1987). Under our rules of evidence, the key inquiry with respect to the admission of expert testimony "is whether such testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' " *Id.* (quoting V.R.E. 702). Since *Catsam*, we have consistently observed that expert testimony regarding the profile of young sexual assault victims and whether the particular complainant fits the profile — the precise subject matter of the challenged testimony here — may greatly assist the jury in

---

[5] We caution that, as with any harmless error analysis, our conclusion here is fact-driven and should not be construed as an endorsement of the court's actions.

We further note that, in light of the strength of the State's case, we need not decide, as have other courts presented with misjoinder, see, e.g., *Lane*, 474 U.S. at 450; *United States v. Chipps*, 410 F.3d 438, 449 (8th Cir. 2005), the issue of whether a court's instructions may ameliorate any potential prejudice generated by a trial conducted pursuant to a multiplicitous indictment.

performing its duty to assess the credibility of the complaining witness in such cases. See, e.g., *State v. Hicks*, 148 Vt. 459, 462, 535 A.2d 776, 777-78 (1987) (citing *Catsam* for this proposition and further observing that "[t]he fact that the jury, if it believes the expert's testimony, may draw inferences which would tend to bolster the victim's credibility does not make the evidence inadmissible" (quotation omitted)); see also *State v. Kinney*, 171 Vt. 239, 247, 762 A.2d 833, 840 (2000) (collecting cases approving of *Catsam*). In light of these precedents and the nature of the expert's testimony, we conclude that its admission in this case was not improper.

¶ 17. That said, defendant correctly notes that we have disapproved of expert testimony that is "tantamount to a direct comment that the complainant [is] telling the truth about the alleged sexual assault." *Catsam*, 148 Vt. at 370, 534 A.2d at 187. Thus, we concluded in *Kinney* that the trial court erred by allowing an expert witness to testify "that at least 98% of the rapes reported actually occurred." 171 Vt. at 252-53, 762 A.2d at 843-44. Here, we are not faced with such a situation. The psychologist did not offer his expert opinion as to S.L.'s truthfulness or the truthfulness of sexual assault victims generally; instead, he merely stated that her delay in reporting the assault was consistent with the profile of a sexually assaulted minor. The distinction, though perhaps subtle at first glance, is nonetheless meaningful, rendering *Kinney* inapposite.

## III.

¶ 18. Defendant further asserts that we should vacate his sentence of nineteen-to-twenty-years imprisonment for violating § 3252(a)(1)(A) because this sentence, imposed by Judge Hayes following his successful appeal, is higher than the eighteen-to-twenty-year sentence he originally received from Judge Suntag. Sidestepping relevant precedents that are decidedly against him with respect to whether the new sentence violated his federal right to due process or demonstrated an abuse of discretion, defendant urges us to adopt, either pursuant to the Vermont Constitution or as a matter of judicial or public policy, an outright ban on higher sentences following a retrial stemming from a successful appeal of a criminal conviction. According to defendant, allowing any judge, under any circumstance, to impose a higher

sentence following a defendant's conviction after a successful appeal always impermissibly burdens a defendant's absolute statutory right of appeal as conferred by 13 V.S.A. § 7401.[6]

¶ 19. Here, because two different judges imposed sentence on defendant, he would have to show, to succeed on a federal due process claim, that the second sentencing judge, Judge Hayes, imposed a greater sentence out of vindictiveness towards him. See *State v. Percy*, 156 Vt. 468, 482, 595 A.2d 248, 256 (1990) (citing *Texas v. McCullough*, 475 U.S. 134, 140 (1986), and *Wasman v. United States*, 468 U.S. 559, 569 (1984)); see also *Pearce*, 395 U.S. at 725 ("Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial."). Defendant has not argued that Judge Hayes acted with actual vindictiveness, and nothing in the record indicates that she did. Indeed, the transcript of defendant's March 2008 sentencing hearing indicates that Judge Hayes increased his sentence primarily due to defendant's "staunch refusal to accept responsibility" for his crime, which indicated to her that his prospects for rehabilitation were negligible. This judgment was well within her discretion — especially given that one of the core goals of sentencing is rehabilitation. See, e.g., *State v. Baird*, 2006 VT 86, ¶ 40, 180 Vt. 243, 908 A.2d 475; *State v. Daly*, 161 Vt. 588, 591, 641 A.2d 91, 93-94 (1993) (mem.) (indicating that it is proper for sentencing judge to consider a defendant's failure to accept responsibility for his crimes in determining an appropriate sentence); *State v. Sims*, 158 Vt. 173, 188, 608 A.2d 1149, 1158 (1991) ("A defendant's acceptance of responsibility for the offense, and a sincere demonstration of remorse, are proper considerations in sentencing. They constitute important steps toward rehabilitation."). Thus, we cannot say that defendant's federal due process rights were violated by the second, harsher sentence following his successful appeal, see *Percy*, 156 Vt. at 482, 595 A.2d at 256; see

---

[6] Section 7401 provides:

> In criminal actions or proceedings in the superior courts or the district court, the defendant may appeal to the supreme court as of right all questions of law involved in any judgment of conviction and in any other order or judgment as to which the state has appealed, provided that if the state fails to perfect or prosecute such appeal, the appeal of the defendant shall not be heard.

also *State v. Pellerin*, 164 Vt. 376, 380-81, 670 A.2d 255, 258 (1995), nor can we conclude that the judge abused her discretion in increasing defendant's sentence by a year.

■ ¶ 20. Moreover, nothing about the facts of this case suggest a violation of due process under the Vermont Constitution, and, furthermore, based on these facts, we decline defendant's invitation to adopt the per se rule he advocates. We are wary of adopting per se rules in criminal cases, see *State v. Lee*, 2005 VT 99, ¶ 29, 178 Vt. 420, 886 A.2d 378 (Johnson, J., dissenting) (citing *State v. Leggett*, 167 Vt. 438, 444, 709 A.2d 491, 495 (1997), and *State v. Kirchoff*, 156 Vt. 1, 8, 587 A.2d 988, 993 (1991)), and generally consider doing so only to remedy obvious abuses.

¶ 21. In the cases defendant urges us to consider, the courts were confronted with such abuses not present here. The defendants in *People v. Henderson*, 386 P.2d 677 (Cal. 1963), and *State v. Wolf*, 216 A.2d 586 (N.J. 1966), originally sentenced to life-imprisonment, faced the imposition of the death penalty upon retrial following their successful appeals. In such situations, a per se rule may be desirable because "[a] defendant's right to appeal from an erroneous judgment is unreasonably impaired when he is required to risk his life to invoke that right." *Henderson*, 386 P.2d at 686. In other cases where courts have adopted the per se rule defendant urges us to accept, the defendant's sentence increased significantly, either proportionately or in absolute terms, following retrial. See, e.g., *Shagloak v. State*, 597 P.2d 142, 144-45 (Alaska 1979) (substantial proportional increase); *People v. Ali*, 424 P.2d 932, 935 (Cal. 1967) (concurrent sentences changed to consecutive); *State v. Holmes*, 161 N.W.2d 650, 651, 652 (Minn. 1968) (original sentence of twenty-years' imprisonment to be served concurrently with pre-existing ten-year prison term increased to twenty-years' imprisonment to be served consecutively with pre-existing ten-year term); *State v. Turner*, 429 P.2d 565, 565-66 (Or. 1967) (significant proportional increase).

¶ 22. The facts of this case are also dissimilar to cases where courts have assumed a more moderate position, allowing a judge to increase a defendant's sentence following retrial after a successful appeal as a matter of state law, but only in certain, highly-circumscribed instances; in these cases, the defendants had also received significantly increased sentences following retrial. See, e.g., *State v. Violette*, 576 A.2d 1359, 1359-61 (Me. 1990)

(sentence increased from sixty days, all but thirty suspended, to six months, all but forty-five days suspended); *Commonwealth v. Hyatt*, 647 N.E.2d 1168, 1170, 1173-74 (Mass. 1995) (concurrent terms of from twenty-five to forty years increased to consecutive terms of twenty-five to forty years and eighteen to twenty-five years, respectively). While we do not take lightly the impact of an additional year's incarceration on defendant, we nevertheless conclude that the circumstances of this case do not warrant the adoption of the far-reaching, inflexible rule he advocates.

*Affirmed.*