MOORE, Circuit Judge,
dissenting.
The majority adopts a general, categorical rule of law that, at least in the mbitary, when a person claims sexual assault years after the alleged incident, the absence of a contemporaneous report to officials able to act against the alleged perpetrator is irrelevant to assessing the credibility of the claim. According to the majority, failure to report a sexual assault is not relevant to whether or not the assault took place. The majority is wrong. AZ and AY are sympathetic claimants, but our jurisdiction prevents us from reviewing fact findings or even applications of law to fact. And as such, the majority was forced to adopt this new, categorical rule of law that is at odds with other courts, which have consistently found that non-reporting of sexual assault is relevant. I respectfully dissent.
Under the legal standard applicable to veterans’ benefits cases, a veteran’s medical and service records and “all pertinent medical and lay evidence” must be considered. 38 C.F.R. § 3.303(a). In short, the VA must consider all relevant evidence. Evidence is relevant if “it has any tendency to make a fact more or less probable than it would be without the evidence.” Fed.R.Evid. 401(a) (emphasis added); see also id. R; 402. The majority never applies this universaby accepted standard of relevance.. The majority accepts that the existence of a report to officials is relevant and admissible; it has a tendency to make the fact of the rape more probable than it would be without the evidence. Inexplicably, it denies the converse: that the failure to report a rape has any tendency to make *1324 the occurrence of the rape less probable than it would be without the failure to report. It simply defies credulity to conclude that a veteran’s failure to report a sexual assault has zero probative value and therefore fails the low relevancy threshold in every case. See Forshey v. Principi, 284 F.3d 1335, 1358 (Fed.Cir.2002) (en banc) (“[T]he definition of evidence encompasses ‘negative evidence,’ which tends to disprove the existence of an alleged fact-”).
The majority’s decision hinges on a study finding that only 15% of sexual assaults in the military were reported between 2006 and 2012. There are several problems with this reliance. First, even if this number accurately reflects reporting of rape in the military in the 1970s and 1980s, when these incidents allegedly occurred, the fact of reporting or non-reporting still meets the low relevance threshold: namely, non-reporting has some tendency to make the fact that the rape occurred less probable. It may well be that a low incidence of reporting would result in little weight being given to the non-reporting, but it doesn’t render that evidence irrelevant. Second, as the majority acknowledges, its 15% figure applies to all sexual assaults. It may be, however, that the reporting rate for the particularly severe incidents of sexual assault of the sort at issue in these appeals (rape) is higher. We do not know, and the majority admits that it has no idea. Maj. Op. at 1313-14. The larger problem is that none of the studies cited by the majority were a part of the record below, and the VA was not given an opportunity to explain their import to the cases before us. Even if we had the authority to create new rules to protect victims of sexual assault, a job for Congress not the courts, we would need to gather additional data and solicit further input from the affected parties in order to reach the result the majority writes into law today.
The majority justifies its blanket rule by cobbling together a “common law” of evidence from a hodge-podge of sources presenting unrelated circumstances. The cases cited by the majority address adoption by silence of the statements of others, exclusion of hearsay evidence, and even the lack of customer complaints in breach of contract cases. But none of these cases support the proposition that the failure to complain of rape to the authorities is not relevant to the question of whether the rape occurred.
We do not need to resort to cases of questionable significance because there exist on-point authorities dealing with sexual assault. These authorities make clear that the fact of non-reporting is routinely admitted into evidence. See, e.g., State v. W.B., 205 N.J. 588, 17 A.3d 187, 206-07 (2011) (approving the jury instruction that “you may consider the silence/delayed disclosure along with all of the other evidence including [complaining witness’s] explanation for his/her silence/delayed disclosure when you decide how much weight to afford to [complaining witness’s] testimony”); 18 Pa.C.S.A. § 3105 (1995) (“Prompt reporting to public authority is not required in a prosecution [of sexual offenses]: Provided, however, That nothing in this section shall be construed to prohibit a defendant from introducing evidence of the complainant’s failure to promptly report the crime.”). Indeed, a major issue in this area of law is the admissibility of expert or other testimony to explain why victims of sexual assault do not report the crime or delay reporting, which suggests that the admissibility of non-reporting itself is not in question. See, e.g., State v. Obeta, 796 N.W.2d 282 (Minn.2011); State v. Hicks, 148 Vt. 459, 535 A.2d 776 (1987); State v. Rizzo, 250 Wis.2d 407, 640 N.W.2d *1325 93 (2002). Cf. Jensen v. Lawrence, 94 Wash. 148, 162 P. 40, 42 (1916) (holding, in a civil rape case, that “[a] delay or even failure to complain at all may be accounted for by proof of circumstances excusing such delay”). Contrary to the majority’s suggestion, I find no indication that any of these authorities are motivated by special solicitude for criminal defendants. Evidence of non-reporting is admitted because it is relevant.
While most jurisdictions appear to have rejected the presumption that a failure to make a contemporaneous report means that the assault did not occur, the majority cites no authority denying the relevance (and admissibility) of that evidence. For example, the majority cites Commonwealth v. Licata, which states that the “lack of a fresh complaint in no way necessarily implies lack of rape.” 412 Mass. 654, 591 N.E.2d 672, 674 (1992) (emphasis added). Licata does not say that the lack of a complaint to the authorities is categorically irrelevant, and neither do any of the other cases cited by the majority. For example, People v. Brown, 8 Cal.4th 746, 35 Cal.Rptr.2d 407, 883 P.2d 949 (1994), cited by the majority, directly contradicts the majority’s holding: “when the victim of an alleged sexual offense did not make a prompt complaint but instead disclosed the alleged incident only some time later, evidence of the fact and circumstances surrounding the delayed complaint ... may be relevant to the jury’s evaluation of the likelihood that the offense did or did not occur.” Id., 35 Cal.Rptr.2d 407, 883 P.2d at 958. Accord Commonwealth v. Lane, 521 Pa. 390, 555 A.2d 1246, 1250 (1989) (“The lack of a prompt complaint by a victim of a crime, although not dispositive of the merits of the case, may justifiably produce a doubt as to whether the offense indeed occurred, or whether it was a recent fabrication by the complaining witness.”).
The majority’s real issue is with the way that the YA weighed the fact of non-reporting, not that fact’s admissibility. I may well agree with the majority that the VA clearly erred by according undue probative value to the fact that AZ and AY did not report the assaults to the authorities.[1] But we have no jurisdiction to review the VA’s weighing of the evidence. See King v. Shinseki, 700 F.3d 1339, 1345-46 (Fed.Cir.2012); Madden v. Gober, 125 F.3d 1477, 1481 (Fed.Cir.1997); see also 38 U.S.C. § 7292(d)(2).
The majority’s additional rule that the absence of a report of sexual assault in the veteran’s records cannot be considered by the VA is completely inapposite to the appeals before us. AZ and AY admitted in the proceedings below that they did not report the alleged assaults to the authorities until long after they had occurred. “The Veteran has stated that she did not report sexual assault to military or civilian authorities.” AZ J.A. 29 (emphasis added); see AZ Br. 9; see also AY J.A. 19 (noting that AY stated at a hearing that “[s] he did not report the incident to police at the time that it occurred”). Because AZ and AY positively admitted that they made no contemporaneous report of rape, the absence of a report in their records *1326 cannot possibly have any bearing on the outcome of the cases before us. Furthermore, there is not the slightest basis for thinking that reports of rape that are made to the authorities do not appear in the records. The majority’s discussion of the relevance of absence of reports of rape is pure dicta.
Even if these veterans’ records mattered, the majority’s conclusion that the absence of a report is irrelevant is unsupportable for similar reasons as the fact of non-reporting: the relevancy threshold is low, and the absence of reports clears it. The VA in these cases did exactly what the applicable statute commands — it gave “due consideration” to the service and medical records of the veterans claiming service-connected disability. 38 U.S.C. § 1154(a)(1) (2012); see also 38 C.F.R. § 3.303(a).
Not only are the statute and regulations clearly contrary to the majority’s holding, but in Buchanan v. Nicholson, we held that “the lack of contemporaneous medical records may be a fact that the Board can consider and weigh against a veteran’s lay evidence.” 451 F.3d 1331, 1336 (Fed.Cir.2006); see also id. at 1337 (“Nor do we hold that the Board cannot weigh the absence of contemporaneous medical evidence against the lay evidence of record.”). In doing so, Buchanan simply restated well-established law — the VA may consider the lack of contemporaneous medical records in the veteran’s file because § 3.303(a) grants it the power to do so. We cannot ignore this binding precedent.
The majority attempts to justify its departure from the governing statute and regulations by arguing that the absence of reporting in a veteran’s records ought not be ádmissible because it would not meet hearsay exceptions codified in Rules 803(7) and 803(10) of the Federal Rules of Evidence. But veterans’ benefits cases allow hearsay, and thus evidence does not need to meet any of the exceptions to the rule against hearsay to become admissible.
When Congress sees the need to protect victims of sexual assault, it acts. For example, Congress decided that evidence of an alleged sexual assault victim’s prior sexual history is categorically inadmissible to prove that the assault did not occur. Fed. R.Evid. 412(a)(1). Congress also amended the FREs to allow admission in criminal cases of evidence that a defendant previously committed sexual assault. Id. R. 413(a). Congress did not, however, enact a rule stating that evidence of nonreport-ing of sexual assault is categorically inadmissible — be it in criminal, civil, or VA settings. Today, the majority usurps Congress’s role with its broad proclamation on the admissibility of certain evidence in the VA system.
AZ and AY are sympathetic claimants. And as a judge, a woman, and a human being, I am dubious about the weighing of the evidence and the fact findings of the VA in this case. But the applicable statutes and basic principles of evidence law leave us without power to help them. We are not allowed to assess the probative value of a veteran’s failure to report a sexual assault to the authorities and mandate to the VA what inferences it may draw from that failure. Nor do we have jurisdiction to weigh the absence of a report of sexual assault in the veteran’s records. Solicitude for veterans does not justify making up rules as we go along.

. I note that the majority's opinion makes it appear as if the VA's decisions in these cases rested largely on the fact of non-reporting. This is unfair to the VA, and simply inaccurate. The VA clearly considered other evidence. See, e.g., AZ J.A. 28 ("[T]he reports of misconduct occurred relatively consistently throughout the Veteran's period of service, and ... did not suddenly begin at point in time concurrent with the beginning of alleged assaults."); id. at 31 (noting recent stressors unrelated to service); see also AY J.A. 22-23 (noting that AY’s demeanor while in service contradicted her claim of being depressed); id. at 23 (noting inconsistencies in AY’s accounts of the incident).